AND NOW, this 3rd day of June, 1998, we **Grant** the petition for allowance of appeal, we **REVERSE** the order of the Superior Court, and we **REMAND** the matter to the Court of Common Pleas of Montgomery County consistent with this Court's opinion in *Schroeder v. Commonwealth of Pennsylvania, Department of Transportation, et al.,* —— Pa. ——, 710 A.2d 23 (Pa.1998).

The BOARD OF PUBLIC EDUCATION
OF the SCHOOL DISTRICT OF
PITTSBURGH, Appellant,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
Appellee.

Superior Court of Pennsylvania.

Argued Sept. 3, 1997.
Filed March 16, 1998.

Robert B. Smith, Pittsburgh, for appellant.

Seymour Kurland, Philadelphia, for appellee.

Before McEWEN, President Judge, and CAVANAUGH, DEL SOLE, BECK, TAMILIA, KELLY, HUDOCK, EAKIN and SCHILLER, JJ.

EAKIN, Judge:

The Board of Education of the School District of Pittsburgh (the "School District") appeals from the order of the Court of Common Pleas of Allegheny County granting the motion for judgment on the pleadings filed by National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). For the following reasons, we reverse.

On April 2, 1992, a civil rights complaint was filed on behalf of a minor student, ("R.C.S."), against the School District, the Board of Public Education of the City of Pittsburgh, the principal of the Margaret Milliones Middle School, and Rudolph B. Walls, president of the middle school's parent-teacher organization. The complaint alleged that because of various enumerated shortcomings by the School District et. al, Walls was able to sexually molest R.C.S., in violation of the student's civil rights.

The School District informed its insurer, National Union, of the allegations both prior to and upon service of the complaint, and requested that National Union provide a defense on behalf of all named defendants, except Walls, under the "School Leaders Error and Omissions Policy." National Union failed to acknowledge receipt of the complaint until after the answer was due to be filed and after a default judgment had been entered.[1] By letter dated April 29, 1992, National Union disclaimed coverage and refused to defend the School District in the matter, citing the following language in the policy:

This policy does not apply:

a) to any claim involving allegations of . . . criminal acts . . .

b) to any claims arising out of . . . (3) assault or battery . . . .

c) to any claim arising out of bodily injury to . . . any person . . . .

The record reflects repeated requests by the School District's solicitor that National Union reconsider its refusal to defend, emphasizing the underlying complaint alleged negligent supervisory conduct and not conduct expressly excluded under the policy. The School District ultimately settled the case on February 23, 1994, then filed the instant action against National Union, alleging breach of contract and bad faith.[2]

On March 9, 1995, National Union filed a motion for judgment on the pleadings as to issues of coverage under the policy, which motion was granted by the trial court. The trial court reasoned "[t]he language utilized in the assault and battery exclusion is clear and unambiguous. No matter how the allegations against the School District are phrased in the R.C.S. claim, all the claims against all the Defendants therein 'arise out of' the assaults and batteries by Defendant Walls against R.C.S." Trial Court Opinion (Corrected), 8/9/95, at 8–9. This appeal followed.

The School District contends the trial court erred in determining (1) its causes of action for breach of contract and bad faith are barred by the terms of the policy, (2) the terms of the assault and battery exclusion relieve National Union of its duty to defend and indemnify against the claims asserted by R.C.S., and (3) National Union had no duty to defend or indemnify against the claims asserted by a non-insured under the policy.

A motion for judgment on the pleadings is properly granted only if the pleadings show no genuine issue of fact exists, and the movant is entitled to judgment as a matter of law. *Kelly v. Nationwide Insurance Co.*, 414 Pa.Super. 6, 9–10, 606 A.2d 470, 471 (1992). On appeal, our scope of review is plenary; we must consider whether the trial court's order "was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury." *Id.* (quoting *Vogel v. Berkley*, 354 Pa.Super. 291, 296, 511 A.2d 878, 880 (1986)). We must limit our consideration to the pleadings and relevant documents and exhibits attached thereto. *Kelly*, 414 Pa.Super. at 10, 606 A.2d at 471. We must accept as true the well-pleaded facts of the non-moving party, considering against that party only those facts it admits. *Id.*

Although we are reviewing the trial court's interpretation of the instant policy in light of the claims raised in the underlying complaint, we need not defer to the trial court's finding since the construction of a contract of insurance is a question of law. *United Services Automobile Association v. Elitzky*, 358 Pa.Super. 362, 368, 517 A.2d 982, 985 (1986), *alloc. denied*, 515 Pa. 600, 528 A.2d 957 (1987). Our primary purpose in interpreting such contracts is to "ascertain the intent of the parties as manifested by the language of the written agreement." *American States Insurance Co. v. Maryland Casualty Co.*, 427 Pa.Super. 170, 181, 628 A.2d 880, 886 (1993) (quoting *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566

---

1. The complaint was filed and served on April 2, 1992. The answer was due within twenty days, and default judgment was entered on April 24, 1992. Judgment was ultimately set aside upon motion of the School District.

2. A third count based on the unfair trade practices act and consumer protection law was dismissed by order of court.

(1983)). If the policy language is clear, such language is given effect by the court. *Id.* If the language is ambiguous, however, we will construe the agreement against the drafter. *Insurance Co. of Pennsylvania v. Hampton,* 441 Pa.Super. 382, 385, 657 A.2d 976, 978, *alloc. denied,* 542 Pa. 647, 666 A.2d 1056 (1995).

An insurer's duty to defend is distinct from, and broader than, its duty to indemnify an insured. *Aetna Casualty and Surety Co. v. Roe,* 437 Pa.Super. 414, 421, 650 A.2d 94, 98 (1994). An insurer is not obligated to defend all claims asserted against its insured; its duty is determined by the nature of the allegations in the underlying complaint. *Wilson v. Maryland Casualty Co.,* 377 Pa. 588, 594, 105 A.2d 304, 307 (1954); *Elitzky,* 358 Pa.Super. at 368, 517 A.2d at 985. An insurer must defend its insured if the underlying complaint alleges facts which, if true, would actually or *potentially* bring the claims within the policy coverage. *Roe,* 437 Pa.Super. at 422, 650 A.2d at 99; *Humphreys v. Niagara Fire Insurance Co.,* 404 Pa.Super. 347, 354, 590 A.2d 1267, 1271, *alloc. denied,* 528 Pa. 637, 598 A.2d 994 (1991).

An insurer who refuses to defend its insured from the outset does so at its peril, *Roe,* 437 Pa.Super. at 423, 650 A.2d at 99; *Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 564, 618 A.2d 945, 953 (1992), because the duty to defend remains with the insurer until it is clear the claim has been narrowed to one beyond the terms of the policy. *Britamco Underwriters, Inc. v. Weiner,* 431 Pa.Super. 276, 283, 636 A.2d 649, 652, *alloc. denied,* 540 Pa. 575, 655 A.2d 508 (1994); *Stidham,* 421 Pa.Super. at 564, 618 A.2d at 953–54. An insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion. *American States,* 427 Pa.Super. at 183, 628 A.2d at 887.

The question before us is not whether National Union was obliged to pay anything; rather the question is whether it had a duty to defend the School District. More precisely, the issue is whether the exclusionary language of the policy excused, as a matter of law, the otherwise manifest obligation to defend. If it does not do so unambiguously, we must reverse the trial court.

Under the policy, National Union agreed to provide coverage for claims alleging "any Wrongful Act (as herein defined) of the Insured or of any other person for whose actions the Insured is legally responsible ...", and to "[d]efend any action or suit brought against the Insured alleging a Wrongful Act, even if such action or suit is groundless, false or fraudulent." By an endorsement to the policy, the definition of Insured was amended to include volunteers. The policy defined Wrongful Act as "any actual or alleged breach of duty, neglect, error ... or omission committed solely in performance of duties for the School District."

The R.C.S. complaint alleged the Board of Education failed to screen persons they knew would have access to young students and failed to implement procedures, policies, or background checks of those in contact with students to facilitate discovery of any criminal history of sexual abuse of children. The complaint also alleged the School District failed to train, instruct or inform its teachers, administrators and employees not to permit unsupervised contact between students and unscreened PTO volunteers, and averred this failure "was so grossly negligent that deprivation of Plaintiff's constitutional rights was substantially certain to result." R.C.S. Complaint, Count I, Paragraph 59, at 9. R.C.S. also alleged acts and omissions of the School Board and the School District "deprived Plaintiff of liberty without Due Process of Law in violation of the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983." R.C.S. Complaint, Count I, Paragraph 60, at 9–10.[3] These allegations of negligence are clearly "wrongful acts" under the policy; the question is whether they fall under the exclusionary language.

**3.** Count II contained the same allegations against the principal, but averred in the alternative that the Board delegated certain policy-making authority to him. Count III contained the complaint's sole allegation of intentional conduct, battery against Walls.

National Union relies on *Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 639 A.2d 1208, appeal *discontinued*, 538 Pa. 639, 647 A.2d 895 (1994), for the proposition that allegations of assault and battery cannot be separated from underlying allegations of negligence in failing to prevent the assault or battery. We do not interpret *Grzeskiewicz* so broadly nor do we consider that case controlling, given the present facts, the allegations of the R.C.S. Complaint, and the language of the policy.

In *Grzeskiewicz*, a patron of the insured (a pub) alleged injuries resulting from an attack by another patron. The pub sought coverage for the patron's personal injury claims under its multi-peril policy, and the insurer sought a declaratory judgment that it had no duty to indemnify or defend the pub. The exclusionary language at issue provided:

> Assault & Battery Endorsement
>
> [T]he Company [Britamco] is under no duty to defend or to indemnify an insured in any action ... alleging such damages:
>
> 1.) Assault;
>
> 2.) Battery;
>
> 3.) Harmful or offensive contact between two or more persons ...
>
> Regardless of degree of culpability or intent and without regard to:
>
> ...
>
> C. The alleged failure of the insured or his officers, employers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.

*Id.* at 62, 639 A.2d at 1211. The complaint alleged solely intentional conduct, and the specific language of the exclusion covered the very conduct at issue. Thus, the policy was found to exclude coverage for the conduct alleged.[4]

Here, unlike *Grzeskiewicz*, the R.C.S. complaint includes allegations grounded in negligence and the policy does not expressly exclude coverage for claims of negligence. Therefore, the *Grzeskiewicz* decision does not control our result.

The underlying complaint in *Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 636 A.2d 649, *alloc. denied*, 540 Pa. 575, 655 A.2d 508 (1994), another declaratory judgment action, also involved claims resulting from an alleged physical attack on a bar patron, (this time by a bar employee) and is more helpful than *Grzeskiewicz*. The relevant exclusion provided:

> ... it is understood and agreed that this policy excludes claims arising out of:
>
> Assault & Battery, whether caused by or at the instructions of, or at the direction of, the insured, his employees, patrons or any causes whatsoever and
>
> Allegations of negligent hiring, supervision, retention or control of employees by or on behalf of the insured.

*Id.* at 281, 636 A.2d at 651–52 (emphasis added). As in *Grzeskiewicz*, the *Weiner* exclusion covered the very conduct at issue in the instant case, negligence in failing to prevent the wrongful act. In *Weiner*, however, the Court made the determination that the insurer owed a duty to defend, which stemmed from the complaint's allegation that the injury was caused by intentional conduct *or negligent conduct*. Because there was a legitimate prospect that negligence, rather than intentional assault or battery caused the injury, the exclusion did not excuse the insurer's duty to defend.

The exclusions in the present case are less expansive, and less explicit, than the exclusions in *Grzeskiewicz* and *Weiner*. Notably, the policy contains no express exclusions for negligent supervision, control, or hiring, or for civil rights violations. Moreover, the exclusions do not by their terms apply to the conduct of a non-insured. We will not supply exclusionary terms neither bargained for nor agreed to by the parties.

■ We turn to the three exclusionary paragraphs herein. Exclusion (a) deals with claims "involving ... criminal acts". This language, at face value, would eliminate coverage for any factual scenario "involving"

---

**4.** Further proof of the agreement of the parties was provided by the application for the policy which expressly excluded the defense of claims of "negligence in hiring, retention and control of employees." *Id.* at 62–63, 639 A.2d at 1211–12.

acts by any person which are arguably criminal; if the case peripherally "involved" someone jaywalking, the insurer could claim its duty to defend was eliminated. Many crimes involve conduct that is merely negligent or reckless; are allegations of negligence to be undefended simply because some facts could arguably comprise criminality? More to our point, would such excuse a duty to defend from the outset, before the issue is determinable? We think this is beyond the contemplation of the parties; a more realistic, less sweeping interpretation must have been intended, for otherwise there would be few if any scenarios where serious claims would be covered.

The claim against the School District "involves" criminal acts, in that it is alleged that its negligence allowed Walls' criminal acts to occur, and that R.C.S. suffered thereby. However, the criminality alleged is one party removed from the insured; it is not alleged the claim involved criminality by the insured School District itself.

Thus the insurer, to avail itself of this exclusion, would interpret the policy to mean "We will defend you against claims of your own negligence, and claims your negligence allowed others to cause injury negligently, but if by reason of that identical negligence any other person acts criminally, you're on your own." That is, under appellee's interpretation, the exact same allegations of the district's negligence could result in coverage, or not, dependent solely on the degree of culpability alleged on the part of parties other than the insured district itself. This would be an anomalous result at best, allowing one's right to a defense against covered claims to rise or fall solely on the alleged nature of the acts of others.

Exclusion (a) does not specify whether a criminal act committed by a non-insured is meant to excuse coverage. If three separate entities are insured, can criminality by one deprive the other two of coverage? If the conduct of one insured is arguably criminal, can the insurer refuse to defend innocent or merely negligent insureds who had no complicity in the criminal acts? Put another way, can allegations of negligence against an insured, clearly covered by the policy, be swept outside the policy's ambit solely by the nature of the allegations against another insured? We think not. *A fortiori*, if the criminal actor is not even an insured,[5] we will not preclude coverage absent exclusionary language expressly dictating such a result. Allowing the insurer to deny a defense against claims sounding entirely in negligence to an entire roster of law-abiding people and groups because of alleged criminality by a single "volunteer" cannot be what the parties bargained for.

The District paid appellee an additional premium to expand the policy's coverage to volunteers; this cannot have been meant to diminish existing coverage to the School District. That is, if the School District had not expanded the range of those covered, its members would expect coverage even though criminality of volunteers was alleged; their expectations appear no. less simply because more persons are added to the roll of those to whom the insured was paid to cover.

*Erie Insurance Exchange v. Claypoole*, 449 Pa.Super. 142, 673 A.2d 348 (1996) (en banc), involved substantially similar facts, and addressed coverage of the criminal wrongdoer (a school bus driver), and coverage of the insured (the employing school officials) separately, even though they were his employers. The *Claypoole* court did not reach the issue of the employers' coverage as it determined the issue was moot. *Id.* at 151–54, 673 A.2d at 353–54. We find it instructive, however, that excludable assaultive and criminal behavior by the insured employee did not, in and of itself, deprive the insured employer of its coverage. Similarly, even if Walls is an "insured" whose conduct is within the exclusionary portion of the poli-

---

**5.** The School District has consistently maintained Walls was not an insured under the policy and did not seek a defense on his behalf. The trial court determined Walls was an insured under the policy pursuant to an endorsement providing a "volunteer" falls within the definition of insured. We have reviewed the pleadings and attached documents and exhibits and conclude Walls' status as an insured is unclear from the record and is disputed by the parties. A determination of Walls' status cannot be made without facts beyond those in front of us. This is a motion for judgment on the pleadings; determination of Walls' status was therefore premature.

cy, the School District is not denied coverage by this fact alone.

■■ Exclusion (b) excuses coverage for claims "arising out of . . . assault or battery."

The injuries arise, according to the pleadings to which we are restricted, from the School District's negligent acts and omissions; the omissions and negligence (the "claim") did not arise from the molestation. That is, Walls' acts "arose out of" the failings of the School District, not the other way around. The complaint of R.C.S. challenged the improper tending of the garden from which the weeds of Walls' misconduct grew, but it is clearly the latter which arose from the former. The weeds give *proof* of the bad gardening, but the *claim*, the ability to hold the gardener responsible, arises from the acts and omissions of the gardener, not the mere presence of weeds. Likewise, Walls' acts alone do not create or give rise to a claim against appellants; that claim cannot stand on allegations of assault alone. It arises, if at all, from other facts, grounded in negligence.

■■ Exclusion (c) excludes coverage for claims "arising out of . . . bodily injury." For the same reasons exclusion (b) does not control, exclusion (c) is equally uncontrolling. The injury to R.C.S. is alleged to have risen from the appellant's negligence—the negligence did not arise from the injury.

Further, the R.C.S. complaint did not allege injury to the body, but rather injury to the civil rights of the plaintiff as manifested by "severe psychological trauma, severe depression, paranoia, loss of self-esteem, mental anguish, embarrassment and humiliation." R.C.S. Complaint at 10. The damage alleged is not "bodily injury"; it is certainly injury, and significant injury at that, but is it injury to the body? He alleged no physical wounds or injury; the damage alleged is to R.C.S.'s civil rights, to his emotions, and to his psyche. While he was seriously affected without question, his injuries are not "bodily injury" within any reasonable interpretation of the terms of the policy exclusions, and we must interpret any ambiguity against the insurer. *Ryan Homes, Inc. v. Home Indemnity Co.*, 436 Pa.Super. 342, 346, 647 A.2d

939, 941 (1994), *alloc. denied,* 540 Pa. 621, 657 A.2d 491 (1995). The School District is not to be denied coverage because of this phrase.

Thus none of the three exclusions, in our estimation, eliminate National Union's duty to defend.

Recent cases in other jurisdictions have involved National Union policies with exclusionary language as herein, with opposite results. National Union offers the recent case of *Winnacunnet Cooperative School District v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania,* 84 F.3d 32 (1st Cir.1996), which involved provisions of an errors and omissions policy materially the same as the policy in this case. In *Winnacunnet,* three high school students pled guilty in New Hampshire to the murder of the husband of the school's media director, Pamela Smart, who had enlisted their help in planning and executing the murder. The students and their parents filed suit, alleging the school district was negligent in hiring and supervising Smart, resulting in such injuries as emotional distress, physical incarceration, loss of education, loss of earning capacity, etc. The court held National Union had no duty to defend the school district based on the exclusions precluding recovery for claims arising out of assault or battery, and bodily injury or death of any person, despite the fact that the underlying complaints did not allege such acts. *Id.* at 38.

In reaching its conclusion, the *Winnacunnet* court broadly interpreted "arising out of" as a term even more comprehensive than the concept of proximate cause. The court determined that under the evidence of record, the alleged injuries originated from or arose out of the murder; the underlying plaintiffs could not prove their claims of negligence without showing how they were affected by the murder. *Id.* at 35–36.

At first blush, the reasoning of *Winnacunnet* appears persuasive; however, we note the court looked well beyond the terms of the pleadings, to depositions, to determine the exclusions precluded coverage. As previously stated, under Pennsylvania law, an insurer's duty to defend is determined solely by the allegations of the underlying complaint.

*Wilson,* 377 Pa. at 594, 105 A.2d at 307; *Elitzky,* 358 Pa.Super. at 368, 517 A.2d at 985. Thus, for purposes of determining a duty to defend at this stage of the proceedings, we will not preclude coverage based on potential proof problems further down the road. R.C.S.'s complaint (with the exception of the Count against Walls) alleges, essentially, negligent supervision and civil rights violations. These claims of negligence are not expressly excluded under the policy; *as pleaded,* they arise out of omissions and negligence of the School District.

Further, as previously noted, we disagree with the *Winnacunnet* court's determination that the negligence arises from the subsequent crime. Where it is alleged that negligence allowed a crime to occur, does the claim against the negligent arise from the negligence or from the criminality? We believe it is the former.

In contrast to *Winnacunnet,* the court in *Durham City Board of Education v. National Union Fire Insurance Co. of Pittsburgh, Pa.,* 109 N.C.App. 152, 426 S.E.2d 451 (1993), *rev. denied,* 333 N.C. 790, 431 S.E.2d 22 (1993), found no exclusion to be appropriate. That case involved policy language *identical* to the policy in our case. As here, National Union refused to defend a school board against allegations of negligence following the rape of a student by a basketball coach. The North Carolina court, recognizing the coach was an employee of the board, and an insured, properly excluded the coach from coverage. That court also held, however, that the language excluding claims involving criminal acts does not exclude allegations against employees of the school board, as the student's allegations "neither 'arise out of' an assault or battery nor 'arise out of' bodily injury ... the allegations against the Board employees in the present case are for money damages suffered as a result of their negligent supervision. The exclusionary language does not, therefore, deny coverage to the Board." *Id.* 426 S.E.2d at 457.

We find this reasoning more persuasive and appropriate to this case than the *Winnacunnet* decision. The allegations against the School District were of negligence and violations of the student's constitutional rights.

While there was a criminal act and an assault or battery here, that was not the act of the School District. To deny the School District a defense against claims that do not allege excluded conduct by the District would be intolerable.

In *Search EDP, Inc. v. American Home Assurance Co.,* 267 N.J.Super. 537, 632 A.2d 286 (1993), an employment placement firm was sued for negligent failure to properly investigate a party referred for employment—the party later violently assaulted a coworker. The New Jersey court pointed out:

The purpose of the errors and omissions policy is to protect an insured who commits an act of professional negligence. If an act of professional negligence causes actionable damage to another, but if the insured's right to protection depends not on the nature of the act but rather on the nature of the resulting damage, we believe that the stated policy objective would be substantially nullified.

With this concept, we agree. Therefore, under the facts of this case, we find the underlying complaint alleged acts which are potentially within the coverage of the policy. The trial court erred as a matter of law, in holding that the policy unambiguously excludes R.C.S.'s allegations of civil rights violations and negligent supervision, and that National Union was justified in refusing to defend against these claims from the outset. Accordingly, we reverse the order of the trial court granting judgment on the pleadings.

Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

DEL SOLE, J., files a Concurring Opinion which is joined by BECK and KELLY, JJ.

DEL SOLE, Judge, concurring.

I join the Majority's conclusion that the trial court erred in entering Judgment on the Pleadings on behalf of Appellee, National Union. In considering whether the claims in this matter "arise out of" assaults and batteries, as found by the trial court, or out of alleged negligent supervisory conduct, as found by the Majority, one is reminded of the

question of what comes first, the chicken or the egg.

Both the trial court and the Majority correctly note that where a third party complaint on its face clearly establishes conduct which is excluded under the terms of the policy, there is no duty to indemnify and no corresponding duty to defend. However, the obligation to defend will arise whenever the complaint filed by the injured party may potentially come within the coverage of the policy. *Seaboard Industries Inc. v. Monaco*, 258 Pa.Super. 170, 392 A.2d 738 (1978). The particular statements set forth in the third party complaint in this case lead me to conclude that National Union had a duty to defend, and if the allegations were ultimately proven, a duty to indemnify. In particular the complaint alleges that the District and the Board "were aware that Walls had a history of arrests and/or convictions for committing sexual crimes against young children," "knew or should have known that Walls was serving probation for committing sexual crimes", "failed to conduct any investigation or background check" on Walls, and despite these facts had a policy which continued "to allow Walls to have regular and unsupervised contact with students." Thus, in my view the Board's failure to act to protect its students, if established, was the claimed breach which was the cause of the student's harm, not the assault committed by Walls. Thus, the exclusions were inapplicable and National Union had a duty to defend against these charges.

Where a claim is potentially within the scope of an insurance policy, and the insurer refuses to defend at the outset, it acts at its own peril. *Aetna Casualty and Surety Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94 (1994). In this matter National Union refused to provide a defense and its insured entered a settlement with the injured party. National Union therefore, by means of its refusal, acted at its own peril and is now liable not only for the expenses incurred by the insured in defending the suit but also for the amount of the settlement made by the insured to the injured party. *See*, Annotation, *Consequences of Liability Insurer's Refusal to Assume Defense of Action*, 49 A.L.R.2d 694

(1956). For these reasons I join the decision to vacate the judgment in this matter and remand the case to the trial court.