[732 NYS2d 70]

WATKINS GLEN CENTRAL SCHOOL DISTRICT et al., Respondents,
v NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA., Appellant, et al., Defendants.

Second Department, October 29, 2001

## APPEARANCES OF COUNSEL

*Robinson Silverman Pearce Aronsohn & Berman, L. L. P.,* New York City (*Mark J. Bunim* and *Glenn B. Coleman* of counsel), for appellant.

*Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger,* Garden City (*Albert J. Turi* of counsel), for respondents.

## OPINION OF THE COURT

S. MILLER, J.

This appeal presents an issue of first impression. Where a school district seeks defense and indemnification under an errors and omissions policy of liability insurance, in connection with charges that it was negligent in the hiring and supervision of a teacher with a history of sexual misconduct with students, may the insurer disclaim coverage under exclusions, *inter alia,* for intentional acts? We find that to permit the insurer to do so would wholly vitiate coverage and frustrate the reasonable expectations of the insured, contrary to the parties' unambiguous intentions. Thus, under the circumstances of this case, the plaintiff Watkins Glen Central School District (hereinafter the District) is entitled to defense and indemnification as a matter of law.

## I

The District seeks a judgment, *inter alia,* declaring that the defendant National Union Fire Ins. Co. of Pittsburgh, Pa. (hereinafter National Union) is obligated to provide it with defense and indemnification under an errors and omissions policy of liability insurance, in connection with an underlying action in the United States District Court. In that underlying action, it was alleged that the District was negligent in connection with its hiring, supervision, and retention of a teacher, Gary Serlo.

Serlo was reportedly convicted in Pennsylvania in 1974 of sex crimes he committed in the course of his prior employment as an elementary school teacher there. Despite a lengthy gap in his teaching employment history, the District hired Serlo in 1984, allegedly without conducting an adequate background check. Then at subsequent times during his employment with

the District, Serlo had allegedly been the subject of complaints of sexual misconduct with students which the District failed to aggressively investigate. In the underlying action, Serlo was alleged to have committed criminal acts of sexual abuse as against the infant plaintiffs in 1996 and 1997, while in the employ of the District at its middle school. The District was alleged, *inter alia,* to have been negligent in its hiring of Serlo, and in its failure to investigate and discover Serlo's alleged "pedophilic conduct involving young boys in the Watkins Glen Middle School throughout the course of his employment."

Insurance coverage for the District is arranged through the New York School Insurance Reciprocal (hereinafter NYSIR), which is, in effect, a legislatively-established insurance cooperative created to service the needs of municipal entities (*see,* Insurance Law art 61; L 1986, ch 220; Mem of State Exec Dept in support of L 1986, ch 220, 1986 McKinney's Sessions Laws of NY, at 2856, 2862-2863). At all pertinent times, the District was insured under two policies of insurance; a NYSIR commercial general liability policy and a school leaders errors and omissions policy underwritten by National Union.

When the District was served with the complaint in the underlying action, it looked to National Union for defense and indemnification under the errors and omissions policy. National Union disclaimed coverage, however, pursuant to two policy exclusions for claims arising from assault and battery, and bodily injury and emotional distress. The District thus commenced this action, *inter alia,* for a declaration of National Union's obligation to provide defense and indemnification in the underlying action.

## II

In support of its motion for summary judgment, National Union asserted that coverage for damages arising from Serlo's alleged sexual misconduct was expressly foreclosed pursuant to the unambiguous language of the assault and battery and bodily injury/emotional distress exclusions. In support of its cross motion for summary judgment, the District offered parol evidence that the parties had purposely negotiated for the elimination of a provision within the policy that would have expressly excluded coverage for sexual molestation. The District thus argued that since the specific exclusion for sexual misconduct had been deleted from the policy, damages arising from Serlo's sexual misdeeds were covered.

Finding the policy provisions to be ambiguous under the circumstances, the Supreme Court considered the credible parol

evidence tendered by the District and granted that branch of its cross motion which was for summary judgment. We now affirm, albeit for different reasons.

## III

The appropriate determination of this appeal requires an understanding of the type of insurance policy involved. An errors and omissions policy is not a standard general liability policy. "An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business" (*Schiff Assocs. v Flack,* 51 NY2d 692, 700). An errors and omissions policy effectively provides malpractice insurance coverage to members of professions other than those in the legal and medical fields (*see, Carey v Employers Mut. Cas. Co.,* 189 F3d 414; *Gallagher & Co. v Bellamy-Baronowskus,* 2001 WL 285268, 2001 Conn Super LEXIS 654 [Conn Super Ct, Mar. 12, 2001]; 1 Couch, Insurance 3d § 1:35). Errors and omissions policies are common in the field of education (*see, St. Paul Fire & Mar. Ins. Co. v Missouri United School Ins. Council,* 98 F3d 343; *Board of Pub. Educ. of School Dist. of Pittsburgh v National Union Fire Ins. Co.,* 709 A2d 910 [Pa Super Ct]; *Edinburg Consol. I.S.D. v INA,* 806 SW2d 910 [Tx Ct App]).

Errors and omissions policies generally provide coverage for acts of negligence and do not insure against intentional acts (*see, DeSantis Enters. v American & Foreign Ins. Co.,* 241 AD2d 859). Furthermore, there is ample authority for the proposition that sexual assaults are intentional acts that ordinarily are excluded from coverage under a general liability policy (*see, Allstate Ins. Co. v Mugavero,* 79 NY2d 153; *Tasso v Aetna Ins. Co.,* 247 AD2d 376; *Travelers Ins. Cos. v Stanton,* 223 AD2d 104; *Pistolesi v Nationwide Mut. Fire Ins. Co.,* 223 AD2d 94). However, none of the cases from this state applying intentional-act exclusions to acts of sexual misconduct have arisen within the context of direct allegations of supervisory negligence against school officials under an errors and omissions policy for the intentional sexual misconduct of a teacher. While Serlo unquestionably committed intentional acts for which National Union owes no duty of defense or indemnification in favor of Serlo, to the extent that the District may be held liable for its negligent hiring and supervision of Serlo, this risk falls squarely within the type of errors and omissions coverage provided by the National Union errors and omissions policy: to wit, professional malpractice liability insurance.

That National Union is obligated to provide defense and indemnification to the District for its alleged negligent acts is best illustrated by a factually-similar case that also involved National Union. In *Board of Pub. Educ. of School Dist. v National Union Fire Ins. Co. (supra),* the parent of a student sued the Board of Education for alleged civil rights violations stemming from the sexual abuse of her child by the president of the parent-teacher organization (hereinafter PTO) of the middle school attended by the child. The Board looked to National Union for defense and indemnification pursuant to an errors and omissions policy similar to the one at bar. National Union disclaimed coverage, *inter alia,* pursuant to assault and battery and bodily injury exclusions. After the Board settled the underlying action, it sued National Union for breach of contract.

National Union moved for judgment on the pleadings, asserting that its denial of coverage was appropriate and in accordance with the cited exclusions. The trial court granted National Union's motion. The Superior Court reversed.

The appellate court applied an analysis very similar to that employed by the courts of this state. It acknowledged that the errors and omissions insurance policy was a contract, the language of which should be interpreted to ascertain the parties' intentions. Effectuating that intent, the court observed that the policy in controversy agreed to provide a defense against any claim of a "wrongful act," defined as "any actual or alleged breach of duty, neglect, error * * * or omission committed solely in performance of duties for the School District" (*Board of Pub. Educ. of School Dist. v National Union Fire Ins. Co., supra,* at 913 [internal quotation marks omitted]). The instant policy contains a nearly identical definition of coverage. The court further observed that in the underlying action, the Board was alleged to have been negligent in its hiring and supervision of PTO volunteers; "clearly 'wrongful acts' under the policy" (*Board of Pub. Educ. of School Dist. v National Union Fire Ins. Co., supra,* at 913).

The court then considered the scope of the relevant exclusions. Placing the appropriate emphasis on the purpose of an errors and omissions policy, namely to protect against acts of professional negligence (*see, Search EDP v American Home Assur. Co.,* 267 NJ Super 537, 632 A2d 286), the court concluded that none of the cited exclusions unambiguously excused National Union from providing a defense for the Board. Indeed, construing the identical exclusions that are asserted in

the instant matter, the court determined that insofar as the Board was concerned, its potential liability did not "aris[e] out of" assault or battery or bodily injury. Rather, the potential liability of the Board was for its alleged negligence in failing to protect one of its students from the sexual predations of a volunteer employee. This was the very object of the errors and omissions coverage.

Case law from this state generally employs a "but for" test that looks to the nature of the underlying conduct to determine whether a certain occurrence is covered or excluded from coverage. Thus, where a negligent supervision claim is predicated upon an intentional act by an insured or an employee of an insured, and an insurance policy contains an exclusion for intentional acts, the exclusion applies (*see, Mount Vernon Fire Ins. Co. v Creative Hous.,* 88 NY2d 347; *U.S. Underwriters Ins. Co. v Val-Blue Corp.,* 85 NY2d 821). If the operative act giving rise to potential liability is an excluded intentional sexual assault, then couching the allegations in terms of negligent supervision or hiring will be ineffective to overcome the exclusion in a general liability insurance policy (*see, General Acc. Ins. Co. v 35 Jackson Ave. Corp.,* 258 AD2d 616; *Mattress Discounters v United States Fire Ins. Co.,* 251 AD2d 384). However, no New York case applying the "but for" or "operative act" test in a case of a sexual or nonsexual intentional assault has done so in the context of an attempt to compel an insurer to provide professional malpractice insurance under an errors and omission policy. To do otherwise would completely undermine the purpose of such errors and omissions coverage.

Consider the rationale behind the intentional act exclusion in the context of a standard homeowner's or automobile liability policy. Such policies provide coverage for unintentional accidents. That is the risk the insurer agrees to underwrite. Accordingly, it is beyond the agreement represented by the insurance contract to compel an insurer to pay for an intentional wrong by its insured. That is not what the parties agreed to (*see, Allstate Ins. Co. v Mugavero, supra*). However, an errors and omissions policy issued to a school district that employs hundreds or thousands of teachers and other workers is expressly intended to provide coverage for negligent acts, including negligence in the hiring or supervision of employees (*see, Board of Pub. Educ. of School Dist. v National Union Fire Ins. Co., supra; Durham City Bd. of Educ. v National Union Fire Ins. Co.,* 109 NC App 152, 426 SE2d 451; *but see, Amos v*

*Campbell,* 593 NW2d 263 [Minn]; *Winnacunnet Coop. School Dist. v National Union Fire Ins. Co.,* 84 F3d 32). While Serlo may have acted intentionally in perpetrating the sexual assaults against the two plaintiff students in the underlying action, liability as against the School District is predicated upon its conceptually independent negligent supervision. Application of the cited exclusions in the instant case would effectively eviscerate the errors and omissions policy altogether.

## IV

While they are not insurers of the safety of their students, schools, acting in loco parentis, are charged with the duty of adequately supervising their students. Schools may be held liable for foreseeable injuries proximately caused by a failure to provide adequate supervision (*see, Mirand v City of New York,* 84 NY2d 44; *Garcia v City of New York,* 222 AD2d 192). " '[A] teacher owes it to his [or her] charges to exercise such care of them as a parent of ordinary prudence would observe in comparable circumstances.' The duty owed derives from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians" (*Mirand v City of New York, supra,* at 49, quoting *Hoose v Drumm,* 281 NY 54, 57-58). In the instant matter, the School District intended to purchase errors and omissions insurance coverage from National Union to insure its risk of loss arising from negligence committed by its employees in its role as parental substitute. National Union's unduly broad disclaimers, however, wholly thwart that intended coverage.

The Appellate Division of the Superior Court of New Jersey recognized just such an anomaly in the factually analogous case of *Search EDP v American Home Assur. Co., supra*). There, an employment agency was alleged to have been negligent in its evaluation of an employee it placed with Toys-R-Us. That employee sexually assaulted a female co-worker.

In reversing the trial court's award of summary judgment to the agency's errors and omissions insurer, the court observed that it was incongruous for an insurer to pledge to pay damages for wrongful acts of professional malpractice, and yet to disclaim coverage for just such acts because they resulted in bodily injury. As the court stated:

> "If an act of professional negligence causes actionable damage to another, but if the insured's right to protection depends not on the nature of the act

but rather on the nature of the resulting damage, we believe that the stated policy objective would be substantially nullified" (*Search EDP v American Home Assur. Co., supra,* 267 NJ Super, at 545, 632 A2d, at 290).

Rather, the court opined that where the risk insured against (professional negligence including negligent hiring) sets in motion a chain of events resulting in an excluded act (an intentional sexual assault), then the insured peril is the proximate cause of the entire loss. Thus, errors and omissions coverage was present.

Clearly, the instant National Union errors and omissions policy was intended to cover the School District's negligence in its rendering of professional services. Such coverage undeniably includes negligence in the hiring and supervision of employees. In the absence of any direct controlling authority to the contrary from any New York court precluding such errors and omissions coverage in a case such as this, we are persuaded that National Union is indeed obligated to provide the School District with defense and indemnification for its potential liability for its alleged professional malpractice. Thus, the order appealed from is affirmed.

O'BRIEN, J. P., FRIEDMANN and TOWNES, JJ., concur.

Ordered that the order is affirmed, with costs.