UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1362

GULF UNDERWRITERS INSURANCE COMPANY,

Plaintiff - Appellee,

versus

KSI SERVICES, INCORPORATED,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, District Judge. (1:05-cv-00875-TSE)

Argued: January 31, 2007                    Decided: May 1, 2007

Before WILKINSON, NIEMEYER, and SHEDD, Circuit Judges.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

**ARGUED:** Wayne Gormly Travell, LEACH & TRAVELL, P.C., Vienna, Virginia, for Appellant. Jonathan M. Jacobs, WILEY, REIN & FIELDING, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Daniel J. Standish, WILEY, REIN & FIELDING, L.L.P., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

KSI Services, Inc., a Virginia real estate developer, engaged Merit Title LLC to provide it with escrow services. Over the course of several years, KSI Services entrusted over $1.1 million in escrow funds to Merit Title pursuant to this arrangement. During the same period, Margaret Dean, Merit Title's bookkeeper, embezzled approximately $1.4 million in over 130 transactions, and Merit Title thereafter went into bankruptcy, unable to return the entrusted funds to KSI Services. The bookkeeper subsequently pled guilty to a criminal charge of embezzlement.

Merit Title submitted claims for its losses to two insurance companies -- one that provided Merit Title with a fidelity bond and another, Gulf Underwriters Insurance Company, which had issued Merit Title an errors and omission policy. The fidelity bond yielded payment to Merit Title of $100,000 for the loss resulting from Merit Title's bookkeeper's dishonesty. Gulf Underwriters, however, denied coverage, contending that Merit Title's loss was excluded from errors and omissions coverage as "arising out of" a dishonest or criminal act.

After KSI Services obtained a default judgment against Merit Title in a Virginia state court in the amount of $827,151.52, plus interest and costs, Gulf Underwriters commenced this action against KSI Services seeking a declaratory judgment that it does not owe coverage for the loss under the errors and omissions policy because

of, among other reasons, the exclusion for dishonest or criminal acts. KSI Services filed a counterclaim seeking indemnity for the judgment it obtained against Merit Title, claiming a total of $860,501.52 plus interest.

The district court granted summary judgment in favor of Gulf Underwriters, and KSI Services filed this appeal. We review the district court's judgment <u>de</u> <u>novo</u>. <u>See</u> <u>In re Wallace and Gale Co.</u>, 385 F.3d 820, 828 (4th Cir. 2004).

The errors and omissions policy issued by Gulf Underwriters provides that Gulf Underwriters will pay on behalf of Merit Title "those sums . . . that [Merit Title] become[s] legally obligated to pay as damages or claim expenses because of claims as a result of a wrongful act in performing insured services for others." A "wrongful act" is defined as, among other things, a "negligent act, error or omission" of Merit Title's "officers, directors and employees," while acting "within the scope of their duties for [Merit Title]." The relevant exclusion from coverage provides:

> We [Gulf Underwriters] are not obligated to pay damages or claim expenses or defend claims for or arising directly or indirectly out of . . . [a]n act or omission that a jury, court or arbitrator finds dishonest, fraudulent, criminal, malicious or was committed while knowing it was wrongful.

Because the damages claimed by KSI Services against Merit Title arose directly or indirectly from the dishonest or criminal act of Merit Title's employee, coverage for the damages is excluded under the plain terms of the policy.

KSI Services asserts that its claim against Merit Title is based on Merit Title's negligent supervision of its dishonest employee, and negligent supervision is a distinct "wrongful act" that is covered by the error and omissions policy. This argument, however, overlooks the fact that while Merit Title's negligent supervision may have been a contributing cause of the loss, an equally important cause of the loss was the bookkeeper's criminal acts. The policy language excluding coverage for damages arising "directly or indirectly" out of criminal acts contemplates multiple causes of liability and does not restrict the exclusion's operation to circumstances in which the criminal act was the liability's direct or sole cause or even its proximate or primary cause. Thus, so long as one of the direct or indirect causes of the loss was a criminal act, the exclusion operates to deny coverage.

In claiming coverage, KSI Services also relies on a line of cases from other jurisdictions construing the language of policies issued by National Union Fire Insurance Company. See Watkins Glen Central Sch. Dist. v. Nat'l Union Fire Ins. Co., 732 N.Y.S.2d 70 (N.Y. App. Div. 2001); Durham City Bd. of Educ. v. Nat'l Union Fire Ins. Co., 426 S.E.2d 451 (1993); Bd. of Public Educ. v. Nat'l Union Fire Ins. Co., 709 A.2d 910 (Pa. Sup. Ct. 1998). These cases are typified by the holding in Watkins Glen where liability was asserted against a school district for negligently hiring, supervising, and retaining a teacher who sexually abused a student.

-4-

732 N.Y.S.2d at 71. The school district's insurance company, National Union Fire Insurance Company, invoked the policy's criminal act exclusion, claiming that the teacher's sexual misconduct, as a cause of the potential liability, relieved the insurer of any duty to defend or indemnify. Id. at 73. The Watkins Glen court did not refer to the specific language of the National Union policy's exclusion, stating only that it was the same exclusion at issue in Board of Public Education, 709 A.2d at 912 (quoting an exclusion for "any claim arising out of . . . assault or battery"), and holding that the exclusion was inapplicable. Id. The court reasoned that "liability as against the school district is predicated upon its conceptually independent negligent supervision." Id. The court reasoned that to deny coverage "would completely undermine the purpose of" the errors and omissions policy, which was intended to insure against negligent acts, including negligent supervision. Id. at 74.

The observation of the Watkins Glen court that a claim of negligent supervision is different from a claim of assault and battery, while true, is irrelevant to this case. The relevant language here excludes damages arising directly or indirectly out of any criminal act. The analysis under this language thus differs from the analysis required under the National Union policy language.

Moreover, we note that a number of courts, construing language generally similar to that before the <u>Watkins Glen</u> court, have ruled contrary to the <u>Watkins Glen</u> line of cases.  <u>See</u> <u>Continental Cas. Co. v. H.S.I. Fin. Servs.</u>, 466 S.E.2d 4, 5 (Ga. 1996); <u>St. Paul Fire & Marine Ins. Co. v. Aragona</u>, 365 A.2d 309, 313 (Md. Ct. Spec. App. 1976); <u>Stouffer & Knight v. Continental Cas. Co.</u>, 982 P.2d 105, 110 (Wash. Ct. App. 1999).

Generally, protection from dishonest or criminal acts is provided by fidelity bonds, not by errors and omissions policies that exclude damages arising out of dishonest or criminal acts. And that is so in this case where the unambiguous language of the policy excludes damages caused in whole or in part by the bookkeeper's dishonest or criminal acts.  Accordingly, we affirm the judgment of the district court.

<u>AFFIRMED</u>