189 Cal.App.4th 1166 (2010)
117 Cal. Rptr. 3d 283
C.A., a Minor, etc., et al., Plaintiffs and Appellants,
v.
WILLIAM S. HART UNION HIGH SCHOOL DISTRICT et al., Defendants and Respondents.
No. B217982.
Court of Appeals of California, Second District, Division One.
November 5, 2010.
*1169 Manly & Stewart, John C. Manly and Vince W. Finaldi for Plaintiffs and Appellants.
McCune & Harber, Stephen M. Harber and Joseph W. Cheung for Defendants and Respondents.

OPINION
JOHNSON, J.
C.A., a minor,[1] filed a complaint through a guardian ad litem, naming as defendants a public high school, the school district, and an individual guidance counselor. The complaint alleged 11 causes of action, including negligence, negligent supervision, negligent hiring, sexual battery, assault, and sexual harassment. The trial court sustained a demurrer without leave to amend. C.A. appeals.

FACTS
C.A. filed his complaint on January 8, 2009. The trial court earlier had granted C.A.'s petition for relief from the provisions of Government Code section 945.4,[2] permitting C.A. to file the complaint.
The complaint alleged that C.A. was a student at a public high school operated by the William S. Hart Union High School District (School District). The head guidance counselor and advisor at the high school (an employee of the School District) was assigned to "counsel, advise and mentor" C.A. The complaint alleged that the guidance counselor sexually harassed, abused and molested C.A. on a number of occasions from January 2007 to September 14, 2007. The guidance counselor drove C.A. home from school and spent long hours with C.A. on and off the high school premises. The guidance counselor performed a variety of sexual acts on C.A. and required him to perform a number of sexual acts on her. C.A. suffered "extensive physical, psychological and emotional damages" as a result. The School District "knew that [the guidance counselor] had engaged in unlawful sexually-related conduct with minors in the past, and/or was continuing to engage in such conduct," but *1170 failed to take reasonable steps to prevent further unlawful sexual conduct by the guidance counselor.
The complaint stated causes of action against the School District, the high school, and the guidance counselor[3] for negligence; negligent supervision; negligent hiring and/or retention; negligent failure to warn, train or educate; constructive fraud; intentional infliction of emotional distress; sexual battery; assault; sexual harassment; gender violence; and unfair business practices.
The School District filed a demurrer to the complaint on February 13, 2009. The School District argued that it could not be held liable in tort in the absence of an authorizing statute or enactment, that it could not be held vicariously liable for the guidance counselor's actions, and that allegations of negligent hiring, training, and supervision did not apply against a public entity defendant. The School District also demurred on behalf of the high school, which was not an independent public entity. The School District filed a motion to strike the portions of the complaint seeking punitive damages, attorney's fees, injunctive relief, and restitution from the School District.
C.A. filed an opposition to the demurrer and the motion to strike, requesting an opportunity to amend if the demurrer were sustained. The School District replied.
The court heard the demurrer on May 18, 2009. At the hearing, the court stated: "Government Code [section] 815.2[, subdivision] (a) ... provided the public entity is liable for injuries proximately caused by an act or omission of employees but within the scope. Here the employee was outside the scope of their employment. And ... the cases that were cited, they were unrelated to the duties of the counselor. And so the moving party can't be held vicariously liable for the misconduct under that government code." The court added: "[O]n the sexual harassment, Civil Code [sections] 51.9 and 52.4 don't provide a statutory basis for those kind [sic] of claims against a public entity." The court also ruled that the high school was a part of the School District and not a public entity. The court sustained the demurrer in its entirety without leave to amend. The court found moot the motion to strike.
Judgment was entered on June 4, 2009, sustaining the demurrer and dismissing the School District from the action with prejudice. The School District served notice of entry of judgment on June 10, 2009. C.A. appealed.

*1171 DISCUSSION
A demurrer tests the sufficiency of a pleading as a matter of law, and we review the trial court's sustaining of the demurrer de novo. (Holiday Matinee, Inc. v. Rambus, Inc. (2004) 118 Cal.App.4th 1413, 1420 [13 Cal.Rptr.3d 766].) "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

I. The facts alleged in the complaint do not support the vicarious liability of the School District.

(1) "Except as otherwise provided by statute," a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (§ 815, subd. (a).) Section 815.2, subdivision (a) sets forth an exception to the rule: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." This means that a public entity employer such as the School District "is vicariously liable for the torts of its employees committed within the scope of the employment." (Lisa M. v. Henry Mayo Newhall Memorial Hospital (1995) 12 Cal.4th 291, 296 [48 Cal.Rptr.2d 510, 907 P.2d 358].) Conversely, a public entity employer is not vicariously liable for the torts of its employees when they act outside the scope of their employment; stated another way, respondeat superior "should apply only to the types of injuries that `"as a practical matter are sure to occur in the conduct of the employer's enterprise."'" (Id. at pp. 298-299.) "Where the facts of the case make it arguable whether the employee has acted within the scope of his employment, then the scope of employment issue is one properly decided by the trier of fact. However, where the facts would not support an inference that the employee acted within the scope of his employment and where there is no dispute over the relevant facts, the question becomes one of law." (Alma W. v. Oakland Unified School Dist. (1981) 123 Cal.App.3d 133, 138 [176 Cal.Rptr. 287].)
In John R. v. Oakland Unified School Dist. (1989) 48 Cal.3d 438 [256 Cal.Rptr. 766, 769 P.2d 948] (John R.), the California Supreme Court faced a question similar to that in this case: "The question before us here is whether *1172 an employer (specifically, a school district) can be held liable for a sexual assault committed by an employee (here, a teacher) on another person (particularly, on a student committed to that teacher's supervision)." (Id. at p. 447.) The complaint filed against the school district alleged that the minor plaintiff was sexually molested by his mathematics teacher, while at the teacher's apartment participating in an officially sanctioned extracurricular program. (Id. at p. 441.) Concluding "[a] more personal escapade less related to an employer's interests is difficult to imagine," the court held that the respondeat superior doctrine should not be applied under those circumstances, and added: "[T]he prospect of such misconduct is conceivable, but that is a far cry from foreseeability, even under the broad meaning that concept is given in the respondeat superior context." (Id. at pp. 447, 450 & fn. 9.) The court reasoned that the policies underlying the doctrine were not served by imposing vicarious liability, and saw "a significant and unacceptable risk that school districts would be dissuaded from permitting teachers to interact with their students on any but the most formal and supervised basis" if respondeat superior applied to hold the school district liable. (Id. at p. 452; see Alma W. v. Oakland Unified School Dist., supra, 123 Cal.App.3d at pp. 139-140 [school district not vicariously liable for sexual molestation by school custodian].)
As in John R., in this case the alleged sexual misconduct of the guidance counselor cannot be considered within the scope of her employment. C.A. argues that the guidance counselor was a counselor, not a teacher, with job duties that "may and may not apply to the position of teacher," but makes no effort to explain how sexual misconduct with a student could possibly fall within the scope of a guidance counselor's employment. We agree with the trial court that as a matter of law no vicarious liability could be imposed on the School District on the causes of action for constructive fraud, intentional infliction of emotional distress, sexual battery, assault, sexual harassment, and gender violence, all of which would hold the School District liable for the guidance counselor's actions.

II. No statute allows a direct action for negligence against the School District.

(2) The complaint stated causes of action against the School District for negligence, negligent supervision, negligent hiring and/or retention, and negligent failure to warn, train or educate. As the complaint does not allege any statutory basis for these negligence causes of action, the trial court was correct in sustaining the demurrer as to the allegations of direct, rather than vicarious, liability for negligence.
*1173 (3) Sections 815, subdivision (a) and 815.6, require an authorizing statute or enactment before a governmental entity such as the School District can be liable in tort. (Searcy v. Hemet Unified School Dist. (1986) 177 Cal.App.3d 792, 798 [223 Cal.Rptr. 206].) C.A. does not identify any statute allowing a suit for direct negligence against the School District.
(4) "We find no relevant case law approving a claim for direct liability based on a public entity's allegedly negligent hiring and supervision practices." (de Villers v. County of San Diego (2007) 156 Cal.App.4th 238, 252 [67 Cal.Rptr.3d 253] (de Villers).) Further, "there is no statutory basis for declaring a governmental entity liable for negligence in its hiring and supervision practices ...." (Id. at p. 253.) C.A. does not point to any statute or enactment. Instead, he argues that language in John R., supra, 48 Cal.3d 438 and Grudt v. City of Los Angeles (1970) 2 Cal.3d 575 [86 Cal.Rptr. 465, 468 P.2d 825] (Grudt) supports the imposition of direct liability on the School District for negligent hiring and supervision.
In John R., the plaintiffs' complaint alleged that the school district was vicariously liable for the teacher's acts, and directly liable for its own negligence. The trial court sustained a demurrer on the causes of action seeking to hold the school district vicariously liable, and the case proceeded to trial against the teacher and the district on the causes of action based on direct liability for negligent hiring and supervision. The district's motion for nonsuit as to the direct liability claims was granted on the ground that the plaintiffs had not complied with the requirement that they present an application for leave to file a late claim, and judgment was entered in favor of the district on all grounds. The Court of Appeal reversed the grant of nonsuit and the order sustaining the demurrer to the causes of action seeking to impose vicarious liability. The California Supreme Court granted review on the "unsettled and significant question" of vicarious liability. (John R., supra, 48 Cal.3d at pp. 443-444.)
As an initial matter, the lead opinion, signed by two justices, addressed the timeliness issue because all the claims against the district would be barred if the plaintiffs did not present their claim to the district in a timely fashion. Affirming the Court of Appeal on the timeliness issue, the Supreme Court remanded for a determination of whether equitable estoppel applied, leaving "plaintiffs ... the opportunity to pursue their claims against the district premised upon its direct liability for negligen[ce]" if they succeeded on the estoppel issue. (John R., supra, 48 Cal.3d at pp. 444, 446.) The court then proceeded to reverse the Court of Appeal's reversal of the trial court order sustaining the demurrer on the vicarious liability claims, "thus leaving *1174 plaintiffs free to pursue only their claims against the district premised on its own direct negligence in hiring and supervising the teacher." (Id. at pp. 452-453.)
In Grudt, the Supreme Court concluded that a complaint could be amended (after the running of the statute of limitations) in a case involving a shooting death by an officer, to add a claim asserting direct liability against the public entity for retaining officers it knew to be dangerous. (Grudt, supra, 2 Cal.3d at pp. 583-585.)
(5) As the Fourth District explained, in both John R. and Grudt, the question was whether direct liability claims were timely, and the court did not reach the issue of the viability of a claim against a public entity for direct liability for negligent supervision, (de Villers, supra, 156 Cal.App.4th at p. 253.) The statements relied upon by C.A. are thus dicta. Further, as a concurring opinion in the California Supreme Court explained, "[T]he policy discussion in John R., supra, 48 Cal.3d 438, was in an opinion signed by only two justices of this court. (There were four separate opinions.) Even the other three justices who agreed there should be no vicarious liability declined to sign the portion of the lead opinion dealing with that issue. Instead, they chose to make clear that they concurred only `in the majority's holding' of no vicarious liability. (Id., at p. 455 (conc. and dis. opn. of Eagleson, J.), italics added.) Except to its precise holding of no liability, the lead opinion stated a minority view and provides no authority for any proposition in a subsequent case. [Citations.] This is hornbook law. `No opinion has any value as a precedent on points as to which there is no agreement of a majority of the court.' [Citation.]" (Mary M. v. City of Los Angeles (1991) 54 Cal.3d 202, 233-234 [285 Cal.Rptr. 99, 814 P.2d 1341].)
(6) We agree with the Fourth District's reasoning distinguishing those cases. (See de Villers, supra, 156 Cal.App.4th at pp. 252-255.) We also agree with its conclusion: "[A] direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained." (Id. at pp. 255-256.) "As a public entity, ... liability must be based on statutory not common law." (Munoz v. City of Palmdale (1999) 75 Cal.App.4th 367, 369 [89 Cal.Rptr.2d 229].)

III. No mandatory duty subjects the School District to liability.

(7) C.A. cites a list in the complaint of what he characterizes as "mandatory duties" that required the School District to protect C.A. and *1175 allow a direct action against the School District. Section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." "`[T]here are three elements to a cause of action under Government Code section 815.6. First, the enactment at issue must be obligatory, not merely discretionary or permissive in its directions to the public entity. [Citation.] Typically, an enactment imposing a mandatory duty also includes specific rules and guidelines for implementation. Second, the duty imposed must be designed to protect against the particular kind of injury the plaintiff suffered.... The third and final requirement is that the breach of the duty must have been a proximate cause of the plaintiffs injury.'" (Bowman v. Wyatt (2010) 186 Cal.App.4th 286, 317 [111 Cal.Rptr.3d 787].)
Most of the duties C.A. listed in the complaint are unaccompanied by any citation to a statute or enactment, and only a few cite general Civil Code sections. Section 815.6 requires that "the mandatory duty be `designed' to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is `"one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty."' [Citation.] Our inquiry in this regard goes to the legislative purpose of imposing the duty. That the enactment `confers some benefit' on the class to which plaintiff belongs is not enough; if the benefit is `incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6." (Haggis v. City of Los Angeles (2000) 22 Cal.4th 490, 499 [93 Cal.Rptr.2d 327, 993 P.2d 983].) The Civil Code statutes cited by C.A. do not "command specific acts designed to prevent an employee" from sexually molesting a student, and do not create a mandatory duty under section 815.6. (de Villers, supra, 156 Cal.App.4th at p. 257.) Because the complaint does not identify a statute specifically imposing a mandatory duty on a public entity such as the School District, the complaint did not state a cause of action for direct liability against the School District.
(8) C.A. relies heavily on the "special relationship" between the School District and its minor students, implying that the relationship itself creates an affirmative duty. We acknowledge that a special relationship exists, but such a relationship does not eliminate the requirement of a statutory basis for tort liability against a public school district. "`A school district owes a duty of care to its students because a special relationship exists between the students and the district. [Citation.] The special relationship, by itself, does not create *1176 liability. Tort liability for governmental entities is based upon statute. [Citations.]' [Citation.]" (Mosley v. San Bernardino City Unified School Dist. (2005) 134 Cal.App.4th 1260, 1263 [36 Cal.Rptr.3d 724].)

IV. C.A.'s other causes of action also fail to state a claim.

(9) C.A.'s cause of action for constructive fraud cites Civil Code section 1573, which provides: "Constructive fraud consists: [¶] 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, [¶] 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud." "`"`Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship.' [Citation.]"'" (Michel v. Moore & Associates, Inc. (2007) 156 Cal.App.4th 756, 763 [67 Cal.Rptr.3d 797].) C.A.'s complaint states that the School District "entered into a fiduciary relationship and special confidential relationship" with C.A. when it held the guidance counselor out as an agent and allowed her to instruct C.A., and by holding itself out as an institution of learning. C.A. does not cite, and we have not found, any authority stating that a fiduciary relationship exists between a school district and an individual student. More importantly, however, this statutory language does not authorize the assertion of a claim of constructive fraud against a public entity, as required to find a mandatory duty under section 815.6.
C.A.'s cause of action for intentional infliction of emotional distress fails because, like the negligence causes of action, it is a common law tort claim unsupported by a statute imposing liability on a public entity. C.A.'s causes of action for sexual battery (citing Civ. Code, § 1708.5) and assault (without a citation to any statute) are also unsupported by any statute holding a public entity liable for sexual battery or assault.
(10) C.A. cites Civil Code section 51.9 in support of his claim for sexual harassment, but that statute does not provide for a claim against a public entity rather than an individual teacher. Civil Code section 52.4, which C.A. cites in support of his claim for gender violence, also does not provide for a civil action against a public entity, and in subdivision (d) states: "[T]his section does not establish any civil liability of a person because of his or her status as an employer, unless the employer personally committed an act of gender violence." (Civ. Code, § 52.4, subd. (d).)
(11) C.A. does not argue on appeal that the court erred in sustaining the demurrer as to his last cause of action, which alleges a violation of Business and Professions Code section 17200 et seq. (the Unfair Practices Act). We *1177 note, however, that a government entity is not a "person" subject to suit under the Unfair Practices Act. (People for Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd. (2005) 125 Cal.App.4th 871, 877-883 [22 Cal.Rptr.3d 900]; see Wells v. One2One Learning Foundation (2006) 39 Cal.4th 1164, 1203 [48 Cal.Rptr.3d 108, 141 P.3d 225].)
Further, to the extent that any of these causes of action seeks to hold the School District vicariously liable for the guidance counselor's actions, we have concluded above that the School District cannot be held liable under respondeat superior.

V. The trial court did not abuse its discretion in denying leave to amend.

C.A. does not indicate how he could amend the complaint to state viable causes of action. He therefore has failed to carry his burden to show a reasonable possibility that he could cure the complaint's defects by amendment. (Blank v. Kirwan, supra, 39 Cal.3d at p. 319.) Further, the complaint shows on its face that it is incapable of amendment. (See California Federal Bank v. Matreyek (1992) 8 Cal.App.4th 125, 130-131 [10 Cal.Rptr.2d 58] [when demurrer is sustained as to original complaint, denial of leave to amend is abuse of discretion unless pleading is on its face incapable of amendment].) The trial court did not abuse its discretion in sustaining the demurrer without leave to amend.

DISPOSITION
The judgment is affirmed.
Rothschild, J., concurred.
MALLANO, P. J., Dissenting.
According to the complaint, the school district knew before and after hiring the guidance counselor that she had molested, and was continuing to molest, students. After hiring her, the district knew she was unfit for the job, but took no action to supervise, train, or discharge her. As a consequence, C.A., a high school student, was sexually molested. These allegations are accepted as true. (See Hensler v. City of Glendale (1994) 8 Cal.4th 1, 8, fn. 3 [32 Cal.Rptr.2d 244, 876 P.2d 1043].) Thus, the school district may be liable for breaching its duty to protect students from physical harm. This court should clearly say so.
Although the school district cannot be held liable for the intentional misconduct of the guidance counselor, it may be liable through respondeat superior for the negligence of other employees who were responsible for hiring, supervising, training, or retaining her.
*1178 "[T]he right of all students to a school environment fit for learning cannot be questioned. Attendance is mandatory and the aim of all schools is to teach. Teaching and learning cannot take place without the physical and mental well-being of the students. The school premises, in short, must be safe and welcoming." (In re William G. (1985) 40 Cal.3d 550, 563 [221 Cal.Rptr. 118, 709 P.2d 1287].)
"Under the California [Government] Claims Act (Gov. Code, § 810 et seq.), `a public entity is not liable for injury arising from an act or omission except as provided by statute. ...' ... Thus, in California, `all government tort liability must be based on statute ....' ... `"In the absence of a constitutional requirement, public entities may be held liable only if a statute ... is found declaring them to be liable."' ...
"[Government Code] [s]ection 815.2, subdivision (a), is one such statute. It provides: `A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee ....' Through this section, the California [Government] Claims Act expressly makes the doctrine of respondeat superior applicable to public employers.... `A public entity, as the employer, is generally liable for the torts of an employee committed within the scope of employment if the employee is liable. ...' ... Under [Government Code] section 820, subdivision (a), `[e]xcept as otherwise provided by statute ..., a public employee is liable for injury caused by his act or omission to the same extent as a private person.' Thus, `the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person ... and the public entity is vicariously liable for any injury which its employee causes ... to the same extent as a private employer ....' ...
"Through these statutes, `the Legislature incorporated "general standards of tort liability as the primary basis for respondeat superior liability of public entities...." ...' ... Under them, `a school district is vicariously liable for injuries proximately caused by [the] negligence' of school personnel `responsible for student supervision.'" (Hoff v. Vacaville Unified School Dist. (1998) 19 Cal.4th 925, 932 [80 Cal.Rptr.2d 811, 968 P.2d 522], fn. & citations omitted.) (Undesignated section references are to the Government Code.)
"To say that someone owes another a duty of care `"is a shorthand statement of a conclusion, rather than an aid to analysis in itself.... `[D]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ...' ... [¶] ... [¶]
*1179 "... `[I]n some instances the relationship of [school personnel] to ... students gives rise to a duty of care.... "While school districts and their employees have never been considered insurers of the physical safety of students, California law has long imposed on school authorities a duty to `supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection....' ... The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care `which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' ... Either a total lack of supervision ... or ineffective supervision ... may constitute a lack of ordinary care on the part of those responsible for student supervision...." ...'" (Hoff v. Vacaville Unified School Dist., supra, 19 Cal.4th at pp. 933-934, citations omitted.)
"The special relationship doctrine may serve as the basis for establishing negligence and liability on the part of a school district for breach of the long-established duty of schools to supervise students in their charge and protect them against harm from others on school premises during the school day." (Searcy v. Hemet Unified School Dist. (1986) 177 Cal.App.3d 792, 804 [223 Cal.Rptr. 206].) "This affirmative duty arises, in part, based on the compulsory nature of education." (M. W. v. Panama Buena Vista Union School Dist. (2003) 110 Cal.App.4th 508, 517 [1 Cal.Rptr.3d 673]; accord, Prosser & Keeton, Torts (5th ed. 1984) § 56, p. 383 [under special relationship doctrine, school's duty to take reasonable precautions for safety of students includes obligation to exercise control over conduct of third persons].)
The foregoing principles have been applied in four significant Supreme Court cases. In Dailey v. Los Angeles Unified Sch. Dist. (1970) 2 Cal.3d 741 [87 Cal.Rptr. 376, 470 P.2d 360] (Dailey), a high school student, Michael Dailey, was killed by another student while they were "slap boxing" during lunch period, unsupervised by school personnel. Michael's parents brought a wrongful death action against the school district and two teachers for failing to provide adequate supervision. The trial court granted a directed verdict for the defendants. The Supreme Court reversed, relying on a line of cases holding that a school district and its employees may be liable for negligent supervision. (Id. at p. 747.) As the court explained: "Section 815.2 is one of the basic substantive provisions of the 1963 California [Government] Claims Act .... It carries over to all `public entities' ... the respondeat superior liability that previously had been imposed upon school districts by Education Code section 903. That section, repealed concurrently with the enactment of *1180 the [Government] Claims Act ... provided: `The governing board of any school district is liable as such in the name of the district for any judgment against the district on account of injury to person or property arising because of the negligence of the district, or its officers or employees.'
"All of the cases cited herein[, which recognized a school district's liability for its employees' negligent failure to supervise and protect students,] were decided under Education Code section 903 or under one of its predecessor statutes.... While these cases may have been superseded in certain respects by subsequently enacted statutory provisions, they certainly have not been wholly abolished as precedent by the California [Government] Claims Act. The pattern of vicarious liability for employees' negligence is essentially identical under both statutes. We have found no evidence indicating an intention on the part of the Legislature to alter the duty to provide supervision of students while on school grounds, the standard of care required of those undertaking to provide supervision, or the amount of evidence necessary to support a finding of negligence...." (Dailey, supra, 2 Cal.3d at p. 747, fn. 3, citations omitted, some italics added.)
Dailey continued: "The fact that another student's misconduct was the immediate precipitating cause of the injury does not compel a conclusion that negligent supervision was not the proximate cause of Michael's death. Neither the mere involvement of a third party nor that party's wrongful conduct is sufficient in itself to absolve the defendants of liability, once a negligent failure to provide adequate supervision is shown.... Nor is this a case in which the intervening conduct of the other student is so bizarre or unpredictable as to warrant a limitation of liability through the expedience of concluding, as a matter of law, that a negligent failure to supervise was not the proximate cause of the injury. There was testimony in the instant case that `roughhousing' and `horseplay' are normal activities for high school boys and it is the function of adult supervision to control just such conduct." (Dailey, supra, 2 Cal.3d at pp. 750-751, citations & fn. omitted, italics added.)
Thus, Dailey recognized (1) school employees may be personally liable for student injuries caused by the failure to provide adequate supervision, and (2) the school district, in turn, may be vicariously liable for the employees' failure to provide adequate supervision. Dailey makes clear that in school district cases, the Government Claims Act did not abolish precedent making school districts liable for negligent supervision, and, accordingly, it is not necessary to identify a statutory basis for the school district's liability other than section 815.2 itself.
*1181 In Hoyem v. Manhattan Beach City Sch. Dist. (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851] (Hoyem), the court addressed the question of "whether, under California law, a school district may ever be held liable when, as a result of school authorities' negligent supervision of students on school premises, a pupil leaves the school grounds during school hours and is subsequently injured by a motorist." (Id. at pp. 511-512.) In answering that question in the affirmative, the court stated: "[O]ur cases have long established that a school district bears a legal duty to exercise reasonable care in supervising students in its charge and may be held liable for injuries proximately caused by the failure to exercise such care." (Id. at p. 513.) "`We entrust the safety of our children to our public school authorities during school hours. They are bound to exercise an amount of care for their safety during that period commensurate with the immaturity of their charges and the importance of their trust.'" (Id. at pp. 519-520.) The court rejected the school district's argument that the conduct of the motorcyclist who hit the plaintiff constituted a superseding cause, precluding any liability on the part of the school district: "Neither the mere involvement of a third party nor that party's wrongful conduct is sufficient in itself to absolve the defendants of liability, once a negligent failure to provide adequate supervision is shown....'" (Id. at p. 521, italics omitted, quoting Dailey, supra, 2 Cal.3d at p. 750.)
As to causation, Hoyem commented: "[W]e certainly cannot say that the risk of a student's injury at the hands of a negligent motorist is, as a matter of law, not a foreseeable risk created by a school district's failure to exercise due care in supervising its pupils.... Thus, the subsequent negligence of the motorist does not necessarily relieve the district of all liability for the injury.... [T]he school district is entitled to join the motorcyclist as a cross-defendant in the action in order to pursue a claim for comparative indemnity; thus, if the jury determines that the motorcyclist is principally responsible for the injuries, he will be the party who will bear primary responsibility for the lion's share of the damages." (Hoyem, supra, 22 Cal.3d at pp. 521-522, citations omitted.)
In John R. v. Oakland Unified School Dist. (1989) 48 Cal.3d 438 [256 Cal.Rptr. 766, 769 P.2d 948] (John R.), a junior high school student was molested by a teacher while participating in an officially sanctioned extracurricular program. There, "[t]he principal question [was] whether the school district that employed the teacher [could] be held vicariously liable for the teacher's acts under the doctrine of respondeat superior." (Id. at p. 441, italics added.) The court answered: "We hold that the doctrine is not applicable in these circumstances and that while the school district may be liable if its own direct negligence is established, it cannot be held vicariously liable for its employee's torts." (Ibid.)
*1182 In John R., Justice Arguelles wrote the lead opinion, in which Justice Broussard concurred, stating: "Scope of employment is viewed broadly in this context. `The fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer...' ... The employer is not liable if the employee substantially departs from his duties for purely personal reasons ..., but `where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer.'" (John R., supra, 48 Cal.3d at p. 447, citations omitted.) "[A]lthough the facts of this case can be made to fit a version of the respondeat superior doctrine, we are unpersuaded that they should be or that the doctrine is appropriately invoked here. We draw our decision not from the various factual scenarios in which vicarious liability has or has not been imposed on employers for the torts of their employees, but instead from the underlying rationale for the respondeat superior doctrine.
"`The principal justification for the application of the doctrine of respondeat superior in any case is the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business.' ... `Although earlier authorities sought to justify the respondeat superior doctrine on such theories as "control" by the master of the servant, the master's "privilege" in being permitted to employ another, the third party's innocence in comparison to the master's selection of the servant, or the master's "deep pocket" to pay for the loss, "the modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business."'" (John R., supra, 48 Cal.3d at p. 450 (lead opn. of Arguelles, J.), citation & fn. omitted, some italics added.)
Ultimately, Justice Arguelles concluded: "The only element of [our] analysis that might point in favor of vicarious liability here is the propriety of spreading the risk of loss among the beneficiaries of the enterprise. School districts and the community at large benefit from the authority placed in teachers to carry out the educational mission, and it can be argued that the consequences of an abuse of that authority should be shared on an equally broad basis. But the connection between the authority conferred on teachers to carry out their instructional duties and the abuse of that authority to indulge in personal, sexual misconduct is simply too attenuated to deem a *1183 sexual assault as falling within the range of risks allocable to a teacher's employer. It is not a cost this particular enterprise should bear, and the consequences of imposing liability are unacceptable." (John R., supra, 48 Cal.3d at pp. 451-452 (lead opn. of Arguelles, J.), italics added.)
Nevertheless, Justice Arguelles mentioned at least four times that the plaintiffs could seek damages based on the school district's own alleged negligence. (See John R., supra, 48 Cal.3d at p. 445, fn. 5 [even if vicarious liability does not apply, "the employer may be independently liable for its own conduct"]; id. at p. 450, fn. 9 [discussing type of foreseeability relevant to whether "the district itself acted negligently ..."]; id. at p. 451 [careful selection of employees and close monitoring of their conduct are relevant to school district's "own direct negligence"]; id. at p. 451, fn. 10 [discussing evidence concerning whether school district was liable for its own negligence].) Indeed, the court's disposition in John R. directed the affirmance of the trial court's order sustaining the demurrer to the vicarious liability claim, "thus leaving plaintiffs free to pursue only their claims against the [school] district premised on its own direct negligence in hiring and supervising the teacher." (Id. at p. 453, italics added.)
Justice Eagleson, with whom Chief Justice Lucas and Justice Panelli concurred, wrote separately, agreeing that the school district could not be held vicariously liable for the molestation but disagreeing with the lead opinion on a procedural issue related to equitable estoppel. (See John R., supra, 48 Cal.3d at pp. 455-462 (conc. & dis. opn. of Eagleson, J.).) Yet, Justice Eagleson acknowledged, "The majority's implicit justification for its ... holdings is that the district may be independently liable for its own misconduct. That is correct but irrelevant." (Id. at p. 456 (conc. & dis. opn. of Eagleson, J.), italics added.)
Justices Mosk and Kaufman each wrote a separate concurring and dissenting opinion, concluding that the school district should be vicariously liable for the molestation. (See John R., supra, 48 Cal.4th at pp. 453-455 (conc. & dis. opn. of Mosk, J.); id. at pp. 462-467 (conc. & dis. opn. of Kaufman, J.).)
In short, each of the justices in John R. concluded the school district could be liable for the student's molestation under one theory or another. (Cf. Mary M. v. City of Los Angeles (1991) 54 Cal.3d 202, 211 & fn. 2 [285 Cal.Rptr. 99, 814 P.2d 1341] [discussing various opinions in John R.].)
In Randi W. v. Muroc Joint Unified School Dist. (1997) 14 Cal.4th 1066 [60 Cal.Rptr.2d 263, 929 P.2d 582] (Randi W.), the school district hired Robert Gadams as vice-principal after receiving favorable letters of recommendation from several of Gadams's colleagues. "Plaintiff ... Randi W.[, a student,] *1184 claim[ed] that [Gadams's colleagues] unreservedly recommended [him] for employment without disclosing to the placement service (and thus to prospective employers) facts defendants knew regarding prior charges or complaints of sexual misconduct and impropriety leveled against Gadams. Defendants' letters allegedly induced [Randi W.'s] school district to hire Gadams, who later sexually assaulted [Randi W.] ...." (Id. at p. 1070.) Randi W. filed suit against the individuals who provided the recommendation letters and their respective school districts. The trial court sustained a demurrer to an amended complaint without leave to amend and dismissed the case. The Court of Appeal concluded that the demurrer should have been overruled as to the fraud and negligent misrepresentation claims.
The Supreme Court agreed with the Court of Appeal, explaining that "defendants' letters of recommendation, containing unreserved and unconditional praise for former employee Gadams despite defendants' alleged knowledge of complaints or charges of his sexual misconduct with students, constituted misleading statements that could form the basis for tort liability for fraud or negligent misrepresentation. Although policy considerations dictate that ordinarily a recommending employer should not be held accountable for failing to disclose negative information regarding a former employee, nonetheless liability may be imposed if, as alleged here, the recommendation letter amounts to an affirmative misrepresentation presenting a foreseeable and substantial risk of physical harm to a third person." (Randi W., supra, 14 Cal.4th at p. 1070.)
In reaching that conclusion, the Randi W. court observed: "As for public policy, the law certainly recognizes a policy of preventing future harm of the kind alleged here. One of society's highest priorities is to protect children from sexual or physical abuse." (Randi W., supra, 14 Cal.4th at pp. 1078-1079, italics omitted.) Further, "the[] letters, essentially recommending Gadams for any position without reservation or qualification, constituted affirmative representations that strongly implied Gadams was fit to interact appropriately and safely with female students. These representations were false and misleading in light of defendants' alleged knowledge of charges of Gadams's repeated sexual improprieties." (Id. at p. 1084.)
Thus, in Randi W., the high court sanctioned the imposition of personal liability on school employees who, in recommending a colleague for employment, make false and misleading representations in light of their knowledge of complaints or charges of sexual misconduct involving the applicant. The defendants in Randi W. had a duty to protect students at another school from an administrator previously charged with sexual improprieties. And Randi W. *1185 would make little sense if a truthful recommendationone disclosing an applicant's past sexual misconductcould simply be ignored by its recipient, namely, the employee making the hiring decision at the other school. The hirer necessarily has a duty to exercise ordinary care in using such information.
Under the Dailey-Hoyem-Randi W. trilogy, a school employee may be held personally liable for his or her negligence in failing to supervise students adequately, and the school district may be vicariously liable for the employee's negligence.
"`[I]n California, an employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness before hiring him....' ... `[T]he theory of negligent hiring here encompasses the particular risk of molestation by an employee with a history of this specific conduct.'" (Juarez v. Boy Scouts of America, Inc. (2000) 81 Cal.App.4th 377, 395 [97 Cal.Rptr.2d 12], italics added & omitted.) "California school districts have long borne a legal duty to exercise reasonable care in supervising students on school premises during school hours." (Hoyem, supra, 22 Cal.3d at p. 523, italics added.)
As noted, the school district in this case is not liable under section 815.2 for the guidance counselor's intentional misconduct in molesting C.A. "[T]he on-duty police officer exception does not apply here." (Doe 1 v. City of Murrieta (2002) 102 Cal.App.4th 899, 910 [126 Cal.Rptr.2d 213], referring to Mary M. v. City of Los Angeles, supra, 54 Cal.3d 202.) In other words, molestation was not "within the scope of [the guidance counselor's] employment." (§ 815.2, subd. (a).)
In addition, a distinction must be made between a school district's vicarious liability and its direct liability: "[U]nder the [Government] Claims Act, public employees are liable for injuries caused by their acts and omissions to the same extent as private persons.... Vicarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior.... As the Act provides, `[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would ... have given rise to a cause of action against that employee,' unless `the employee is immune from liability.' (Gov. Code, § 815.2, subds. (a), (b).)" (Zelig v. County of Los Angeles (2002) 27 Cal.4th 1112, 1128 [119 Cal.Rptr.2d 709, 45 P.3d 1171], citation omitted.) In contrast, section 835 imposes direct liability on a *1186 public entity for injuries proximately caused by a dangerous condition on property. (See Zelig, at pp. 1131-1135.)
Here, the school district's liability is based on the wrongful conduct negligenceof employees other than the guidance counselor. The school district knew before hiring the guidance counselor that she had molested students. Yet, one or more school district administrators, with that knowledge, decided to hire her. After she was hired, one or more administrators knew that the counselor was continuing to molest students, but failed to supervise, train, or discharge her.
These administrators, who had a duty to protect students from harm, were required, within the scope of their employment, not to hire a guidance counselor they knew to be a child molester. After the counselor was hired, they had to take appropriate action within the scope of their employment to supervise, train, and, if necessary, discharge the counselor, whom they knew to be a continuing threat. Under the Dailey-Hoyem-Randi W. trilogy, the administrators' negligent acts and omissions in hiring, training, supervising, and retaining the guidance counselor may give rise to their personal liability, and, under section 815.2, the school district may be vicariously liable for the administrators' negligence.
Decisions of the Courts of Appeal are in accord. In Leger v. Stockton Unified School Dist. (1988) 202 Cal.App.3d 1448 [249 Cal.Rptr. 688] (Leger), the court held that school employees who fail to provide adequate supervision may be liable for a student's assault by a nonstudent in a restroom and that the school district may be liable for the employees' failure to supervise. (See id. at pp. 1460-1462.) The court stated: "`As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection." ...' ... [¶] ... [¶]
"... [W]e think it obvious that the individual school employees responsible for supervising plaintiff ... had a special relation with plaintiff upon which a duty of care may be founded.... A contrary conclusion would be wholly untenable in light of the fact that `the right of all students to a school environment fit for learning cannot be questioned.... The public school setting is one in which governmental officials are directly in charge of children and their environs, including where they study, eat and play.... Further, the responsibility of school officials for each of their charges, the *1187 children, is heightened as compared to the responsibility of the police for the public in general.'" (Leger, supra, 202 Cal.App.3d at pp. 1458-1459, citations omitted.)
Leger also held that the school district was not immune given that a statute imposed liability. In distinguishing another case, Leger explained: "In Rodriguez v. Inglewood Unified School Dist. (1986) 186 Cal.App.3d 707 [230 Cal.Rptr. 823], the court considered whether a school district could be held liable when a student was assaulted on campus by a nonstudent. On the question of duty, the court concluded `that a special relationship is formed between a school district and its students so as to impose an affirmative duty on the district to take all reasonable steps to protect its students.' ..." (Leger, supra, 202 Cal.App.3d at p. 1458.) "Even though Rodriguez ... determined a school district has a duty to protect students on campus from violent assaults by third parties, the court concluded the defendant school district was not liable because no statute provided for liability.... `[I]n California, all government tort liability must be based on statute....' ...
"However, Rodriguez did not examine Government Code sections 815.2 and 820, imposing liability on a public entity for the torts of its employees....
"Here, ... plaintiff has sued employees of the District and pursues the District on a theory of respondeat superior.... Section 820 provides in relevant part that except as otherwise statutorily provided, `a public employee is liable for injury caused by his act or omission to the same extent as a private person.' ... Section 815.2 provides in pertinent part that the entity `is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would ... have given rise to a cause of action against that employee ....' ... Thus, `the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person (§ 820, subd. (a)) and the public entity is vicariously liable for any injury which its employee causes (§ 815.2, subd. (a)) to the same extent as a private employer (§ 815, subd. (b)).'" (Leger, supra, 202 Cal.App.3d at pp. 1460-1461, citations omitted; accord, Virginia G. v. ABC Unified School Dist. (1993) 15 Cal.App.4th 1848, 1853-1855 [19 Cal.Rptr.2d 671] [applying Leger and § 815.2 in concluding school district could be liable for teacher's molestation of student if school employees responsible for hiring and supervising teacher knew or should have known of his or her prior sexual misconduct]; Hanson v. Reedley etc. School Dist. (1941) 43 Cal.App.2d 643, 648-650 [111 P.2d 415] [affirming jury verdict against school district under predecessor statute to § 815.2 where tennis coach told two students to ride home after practice with third student whom coach knew to be reckless driver, and ensuing car accident injured one passenger and killed the other].)
*1188 Similarly, in the present case, at least one school district administrator although not named or suedwho was acting within the scope of his or her employment, hired a guidance counselor whom the administrator knew to be a child molester. Thereafter, no one in the administration took any safety precautionsby way of supervision, training, or terminationto protect students from the counselor despite the knowledge of her continuing misconduct. Under Leger, an administrator's personal liability is based on negligence in failing to protect a student from physical harm. (See Leger, supra, 202 Cal.App.2d at pp. 1458-1459.) The school district's liability is vicarious, based on the administrator's failure to exercise ordinary care in the exercise of tasks falling within the scope of his or her employmenttasks concerning the control of a known molester's conduct. (See Leger, at pp. 1460-1461; accord, M. W. v. Panama Buena Vista Union School Dist., supra, 110 Cal.App.4th at p. 518 ["California courts have long recognized that a student may recover for injuries proximately caused by a breach of this duty to supervise."]; J.H. v. Los Angeles Unified School Dist. (2010) 183 Cal.App.4th 123 [107 Cal.Rptr.3d 182] [school employees' failure to supervise minor child on playground may give rise to personal liability where child was sexually battered by other students, and employees' negligent supervision may support liability of school district under § 815.2]; Phyllis P. v. Superior Court (1986) 183 Cal.App.3d 1193, 1196-1197 [228 Cal.Rptr. 776] [school officials violated duty under doctrine of in loco parentis by failing to take necessary steps to protect female student from rape after learning she had been sexually assaulted by male student].)
Courts in jurisdictions other than California have reached the same conclusions. In Doe Parents No. 1 v. State, Dept. of Education (2002) 100 Hawaii 34 [58 P.3d 545], the plaintiffs sued the Hawaii Department of Education (Department), alleging that a school teacher, Lawrence Norton, had molested their children and that the Department was liable for negligence and negligent infliction of emotional distress (NIED). The Department argued that the suit was barred by the State Tort Liability Act (STLA) (Hawaii Rev. Stat. § 662-1 et seq.), specifically, the section precluding suits for intentional torts (id., § 662-15(4)). The Hawaii Supreme Court disagreed, explaining: "In the present matter, the plaintiffs' negligence and NIED claims are not duplicitous of their respondeat superior claim. Under the latter, the plaintiffs posit that the [Department], as Norton's employer, is vicariously liable for his molestation of the girls because Norton's acts of molestation occurred within the scope of his employment with the [Department]; the conduct of other [Department] employees, such as Norton's supervisors, is irrelevant to the [Department]'s potential liability [under respondeat superior], because the only material question is whether Norton's molestation of the girls constituted a negligent act that was within the scope of his employment.... It is precisely such a theory of liability that the STLA's intentional tort exception *1189 precludes, where the allegedly negligent act of the employee is asserted to be `assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.' ... In other words, the plaintiffs' respondeat superior claim must `aris[e] out of' Norton's assault and battery of the girls because his molestation of them is the sole basis of the plaintiffs' claim against his employer, the [Department].
"On the other hand, the plaintiffs' negligence and NIED claims are not predicated upon Norton's molestation of the girls per se. Rather, the plaintiffs posit that other [Department] employees ... breached a duty that legally caused the plaintiffs' injuries. The plaintiffs' theory of negligence predicated, as it is, upon the acts and omissions of Norton's supervisors does not, therefore, `arise out of' Norton's molestation of [the students]. To the contrary, Norton's molestation of [the students] arises out of [his supervisors'] antecedent negligent acts and omissions in reinstating and in failing to supervise him....
"Based on the foregoing discussion, we hold that, where a plaintiff's negligence claim against the State seeks to hold the State vicariously liable for a state employee's `assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights' under the doctrine of respondeat superior, the State is, pursuant to [the STLA] immune from the plaintiff's claim. However, where the plaintiff's negligence claim seeks to hold the State liable for the conduct of state employees other than the alleged intentional tortfeasor, pursuant to theories of negligent hiring, retention, supervision, or the like, the plaintiff's claim does not necessarily `arise out of' the hired, retained, or supervised employee's intentional tort. Rather, if the State knew, or reasonably should have anticipated, that one of its employees would commit an intentional tort against a person to whom the State owed a duty of care, the State is liable for the negligence of those employees who were in a position to take reasonable precautions against the anticipated harm.
"In light of the foregoing, we further hold, to the extent that the plaintiffs predicate their negligence and NIED claims upon the [Department]'s negligent retention and supervision of Norton, that the STLA's intentional tort exception does not insulate the [Department] from liability; given that the plaintiffs have alleged that the [Department] reasonably should have anticipated that Norton would molest the girls, their negligent retention and supervision claims do not `arise out of' Norton's acts of molestation." (Doe Parents No. 1 v. State, Dept. of Education, supra, 58 P.3d at pp. 578-579, fns. & citations omitted.)
*1190 In discussing the legal basis of the plaintiffs' claims, the Hawaii Supreme Court stated: "[W]e hold that the duty of care that the [Department] owes to students and their parents is, on a general level, a duty to take whatever precautions are necessary reasonably to ensure the safety and welfare of the children entrusted to its custody and control against harms that the [Department] anticipates, or reasonably should anticipate. Although we have not expressly said so in the past, it is readily apparent that the foregoing duty arises from the `special relationship' that the [Department] shares with its students and their parents .... Thus, whether the [Department]'s duty is characterized as one of `reasonable supervision of its students,' ... or as a `special' duty, `in loco parentis,' to exercise reasonable care to protect a student from foreseeable harm, ... does not alter what the [Department]'s duty quintessentially entailsto exercise reasonable care in ensuring that students are educated in a safe environment free from any unreasonable risks of harm.... [T]he [Department]'s duty stems from its custodial relationship, in loco parentis, with students and, thus, obligates the [Department] reasonably to anticipate, as would a reasonably prudent parent, foreseeable harm and to take whatever action is reasonable to protect a student from that foreseeable harm." (Doe Parents No. 1 v. State, Dept. of Education, supra, 58 P.3d at pp. 591-592.)
As a New York court stated in a suit involving a teacher's molestation of a six-year-old student: "`Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment' .... An act of sexual assault by an employee is a clear departure from the scope of employment, committed solely for personal reasons, and unrelated to the furtherance of the employer's business .... Therefore, the District may not be held vicariously liable for a sexual assault committed by its employee.
"Even so, a school has a duty to adequately supervise students in its care, and may be held liable for injuries that are foreseeable and proximately related to the school's failure to provide adequate supervision .... The standard to determine whether the school has breached its duty is to compare the school's supervision and protection to that of `a parent of ordinary prudence placed in the identical situation and armed with the same information' .... Where liability is imposed on a school for negligent supervision due to injuries related to an individual's intentional acts, the plaintiff generally must demonstrate the school's prior knowledge or notice of the individual's propensity or likelihood to engage in such conduct, so that the individual's acts could be anticipated or were foreseeable...." (Dia CC. v. Ithaca City School Dist. (2003) 304 A.D.2d 955 [758 N.Y.S.2d 197, 199-200].)
*1191 In an Idaho case, the state supreme court rejected the argument that the Idaho Tort Claims Act (Idaho Code Ann., § 6-901 et seq.), which provides immunity for liability arising out of an assault or battery, protected a school district that hired and retained a teacher knowing of his prior sexual misconduct. The court said: "The school district contends that the plaintiffs' action against it for negligent retention arose out of [the teacher's] assault and battery on the plaintiff children, and therefore that the school district is immune from liability under [the assault and battery exception].
"There is a distinction between the conduct which forms the basis of a cause of action in negligence and one for assault and battery. A cause of action in negligence requires the breach of a duty which is the proximate cause of the plaintiff's injury. . . . A battery, on the other hand, requires intentional bodily contact which is either harmful or offensive. . . . Under the plaintiffs' allegations, the children's injuries arose out of the basic negligence of the school district. The injuries were the foreseeable consequence of the school district's negligence in retaining [the teacher] despite full knowledge of his proclivities.
"The fact that the plaintiffs' injuries were caused by a third party does not absolve the school district from liability for its negligence. The concept of supervening causation is inapplicable, under the allegations of the present case. [The teacher's] actions were the foreseeable result of the school district's alleged failure to exercise due care to protect its students. The very risk which constituted the district's negligence was the probability that such actions might occur.
"It is clearly unsound to afford immunity to a negligent defendant because the intervening force, the very anticipation of which made his conduct negligent, has brought about the expected harm. . . . To do so would fly in the face of basic principles of tort law . . . . `If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the [school district] negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [school district] from being liable for harm caused thereby.'" (Doe v. Durtschi (1986) 110 Idaho 466 [716 P.2d 1238, 1243-1244], citations omitted.) The Idaho Supreme Court succinctly concluded: "We do not believe that the Idaho legislature, by creating an exception to governmental liability for actions arising out of assault and battery, thereby intended to relieve state agencies from any duty to safeguard the public from employees whom they know to be dangerous. The factual situation alleged in the present case presents a haunting example. Surely the Idaho legislature could not have intended that school districts could . . . retain known child molesters in the classroom with total impunity under the [Idaho Tort Claims Act]." (Id., 716 P.2d at p. 1245.)
*1192 Under Florida law, "[t]he retention and supervision of a teacher by a school board are not acts covered with sovereign immunity. The school board has a common law duty to protect others from the result of negligent hiring, supervision, or retention which duty is identical to the duty upon private employers who hire, retain, or supervise employees whose negligent or intentional acts in positions of employment can foreseeably cause injuries to third parties." (School Bd. of Orange County v. Coffey (Fla.Dist.Ct.App. 1988) 524 So.2d 1052, 1053; see Hertzel v. Palmyra School District (2007) 15 Neb.App. 538 [733 N.W.2d 578, 584-586] [school district may be liable for sexual molestation of student (R.H.) by another student (J.D.) where school employee knew, prior to molestation, that J.D. had inappropriately "touched" R.H. but took no action to protect R.H. from further abuse by J.D.].)
A school district's liability for negligent hiring or supervision also finds support in the context of insurance defense. In Board of Education v. National Union Fire Ins. (Pa.Super.Ct. 1998) 709 A.2d 910, a student had sued the board of education for molestation, alleging negligent supervision of the molester, Rudolph Walls, the president of the parent-teacher association. The complaint alleged the board knew Walls had a history of convictions for committing sexual crimes against children, and he was on probation for those crimes, but the board allowed him to have unsupervised contact with students. (Id. at p. 918 (conc. opn. of Del Sole, J.).) The defendants sought a defense from their errors and omissions insurer, which denied coverage under exclusions for any claim involving a criminal act, arising out of an assault or battery, or arising out of bodily injury to any person. The trial court granted the insurer's motion for judgment on the pleadings.
The appellate court reversed. The court initially commented that the insurance policy contained no express exclusions for negligent hiring, supervision, or control. (Board of Education v. National Union Fire Ins., supra, 709 A.2d at p. 914.) In discussing the criminal acts exclusion, the court stated: "The claim against the School District `involves' criminal acts, in that it is alleged that its negligence allowed Walls' criminal acts to occur, and that [the plaintiff] suffered thereby. However, the criminality alleged is one party removed from the insured; it is not alleged the claim involved criminality by the insured School District itself. [¶] . . . [¶] . . . [I]f the criminal actor is not even an insured, we will not preclude coverage absent exclusionary language expressly dictating such a result. Allowing the insurer to deny a defense against claims sounding entirely in negligence to an entire roster of law-abiding people and groups because of alleged criminality by a single `volunteer' cannot be what the parties bargained for." (Id. at p. 915, fn. omitted.) In rejecting the applicability of the other policy exclusions, the court noted: "The injuries arise . . . from the School District's negligent acts and *1193 omissions; the omissions and negligence (the `claim') did not arise from the molestation. That is, Walls' acts `arose out of' the failings of the School District, not the other way around. . . . Walls' acts alone do not create or give rise to a claim against [defendants]; that claim cannot stand on allegations of assault alone. It arises, if at all, from other facts, grounded in negligence." (Id. at p. 916.)
In Durham Bd. of Education v. National Union (1993) 109 N.C.App. 152 [426 S.E.2d 451], the school board and four faculty members were sued by a student who had been molested by the boys' basketball coach. The complaint alleged that the four faculty members "failed to exercise due care for the health and safety of [the student], negligently failed to reprimand or counsel [the coach] when they knew [he] was likely to engage in improper sexual conduct with a student under his supervision, failed to properly and timely investigate a sexual incident involving [the coach] and another thirteen-year-old student, . . . and failed to establish proper policies and procedures in order to deal with incidents involving sexual contact between students and teachers. In addition, [the complaint] allege[d] [the school superintendent] negligently hired [the coach] when he knew of [the coach's] propensity toward engaging in sexually provocative behavior with students." (Id., 426 S.E.2d at p. 454.)
The faculty members turned to the school's insurer for a defense, which was denied. In the declaratory relief action that followed, the court of appeals rejected the insurer's arguments, stating: "As the Superintendent, the Assistant Superintendent, the Principal of [the school], and [the fourth faculty member] . . ., the duties of these four employees would include taking precautions to prevent sexually provocative behavior between a teacher and a student, investigating an alleged sexual incident between a teacher and a student, supervising an athletic coach, and exercising professionalism and confidentiality in the investigation of a sexual incident involving a teacher and a student. The acts alleged against the Board, are, therefore, within the scope of the duties of [those employees].
"By its specific language, the Policy covers Hammonds, Smith, and Hunter as `insured' because they are the `Superintendent,' the `Assistant Superintendent,' and the `Principal' of [the school]. The Policy also covers Bradshaw[, the fourth faculty member,] as an `insured' by the language of the endorsement as any employee acting within the scope of his duties. Additionally, these alleged acts fall into the definition of `Wrongful Act[s]' as `any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission committed solely in the performance of duties for the School District. . . .' We hold, therefore, that the Policy covers the Board for these alleged acts and that [the insurer] has a duty to defend the Board." (Durham Bd. of Education v. National Union, supra, 426 S.E.2d at pp. 454-455.)
*1194 And in Watkins Glen Central v. National Union Fire (2001) 286 A.D.2d 48 [732 N.Y.S.2d 70] (Watkins Glen), the school district sought a defense and indemnification under its errors and omissions policy in connection with accusations it had negligently hired and supervised a teacher who had a history of sexual misconduct with students. In reversing summary judgment in favor of the insurer, the appellate division explained: "`An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business' . . . . An errors and omissions policy effectively provides malpractice insurance coverage to members of professions other than those in the legal and medical fields . . . . Errors and omissions policies are common in the field of education . . . .
"Errors and omissions policies generally provide coverage for acts of negligence and do not insure against intentional acts . . . . Furthermore, there is ample authority for the proposition that sexual assaults are intentional acts that ordinarily are excluded from coverage under a general liability policy . . . . However, none of the cases from this state applying [the] intentional-act exclusion[] to acts of sexual misconduct have arisen within the context of direct allegations of supervisory negligence against school officials under an errors and omissions policy for the intentional sexual misconduct of a teacher. While [the molester] unquestionably committed intentional acts for which [the insurer] owes no duty of defense or indemnification in favor of [him], to the extent that the District may be held liable for its negligent hiring and supervision of [the molester], this risk falls squarely within the type of errors and omissions coverage provided by the . . . policy: to wit, professional malpractice liability insurance." (Watkins Glen, supra, 732 N.Y.S.2d at p. 72, citations omitted, italics added.)
In Watkins Glen, the court concluded: "[A]n errors and omissions policy issued to a school district that employs hundreds or thousands of teachers and other workers is expressly intended to provide coverage for negligent acts, including negligence in the hiring or supervision of employees . . . . While [the molester] may have acted intentionally in perpetrating the sexual assaults against the two plaintiff students in the underlying action, liability as against the School District is predicated upon its conceptually independent negligent supervision." (Watkins Glen, supra, 732 N.Y.S.2d at p. 74.)
In determining whether a school district is liable for negligence in a molestation case, the duty to exercise ordinary care may vary with the circumstances. For example, in M.W. v. Panama Buena Vista Union School Dist., supra, 110 Cal.App.4th 508, a student who had been sexually assaulted by another student filed suit against the school district for negligent failure to supervise. In affirming a jury verdict in favor of the student, the Court of *1195 Appeal emphasized that some of the school's students, including the victim, were special education students: "M.W. (the minor), 15 years old at the time, was enrolled in eighth grade at [the school] in a special education class. He had a third-grade mentality, and the school categorized him as mentally retarded, a designation that carried special concerns with regard to his safety and well-being. The minor had unique vulnerabilities and was susceptible to being `tricked' and emotionally abused. The principal testified that sexual abuse of special education students was also a concern." (Id. at pp. 512-513.) The court continued: "[W]e find it reasonably foreseeable that, given the lack of direct supervision in the early morning hours, a special education student, such as the minor, was at risk for a sexual or other physical assault. The District's superintendent acknowledged that supervision has a special meaning to educators on the issue of safety and entails observing the person being supervised. This simply did not occur at [the school] . . . . Given the unique vulnerabilities of special education students, the District knew or reasonably should have known that the minor was subject to the risk of an assault, including a sexual assault [by another student]." (Id. at p. 520.) "When a school district instructs special education children, it takes on the unique responsibilities associated with this instruction and the special needs of these children." (Id. at p. 521.)
A similar consideration is present here. The school district hired a guidance counselor, not a teacher, coach, staff member, or custodial worker. "A school counselor often wears many hats and may work in elementary, middle, or high schools. . . . [A] professional school counselor must ultimately communicate with the students under her charge. Specifically, the professional counselor takes on a dual role with respect to student interaction: she is both an advisor on personal issues and an . . . academic consultant. Consequently, a school counselor can be one of the most important persons students will encounter during their educational development. [¶] . . . [¶]
"In many instances, the counselor is the person to whom students speak regarding personal problems that have affected, or may eventually affect, academic performance. In such instances, the counselor may make suggestions tailored to the individual student, such as having the student speak one-on-one with the instructor at issue; speaking with the instructor herself; or convening a conference with the counselor, student, instructor, and, sometimes, the parent. . . . [A] student may come to a counselor seeking her opinion, anticipating that the counselor will take all the factors involved under consideration." (Note, Iowa School Counselors Had Better Get It Right! (2004) 89 Iowa L.Rev. 1093, 1096-1097, fns. omitted.)
"A guidance counselor plays a crucial role in the development of a high school student's future. . . . [¶] The interactions between student and *1196 counselor and their resultant decisions can have a long-lasting impact on the life of the student. . . . [¶] The relationship between a guidance counselor and student is premised upon trust. The student relies on the counselor to give accurate and informed advice." (Note, TortsNegligent Misrepresentation High School Guidance Counselors Can Be Held Liable When Their Erroneous Advice Prevents A Student-Athlete From Obtaining An Athletic ScholarshipSain v. Cedar Rapids Community School District, 626 N.W.2d 115 (Iowa 2001) (2002) 12 Seton Hall J. Sport L. 311, 311-312, fn. omitted.) In short, guidance counselors have the "importan[t] [task] of advising students on personal, social, academic and vocational matters." (Luhm v. Board of Hot Springs County School Dist. (Wyo. 2009) 206 P.3d 1290, 1297.)
Yet, in this case, the school district hired a known child molester to be a guidance counselora position that, by definition, often brings the counselor and a student into confidential one-on-one contact about the student's personal concerns.
The Restatement Second of Torts supports liability on the part of the school district, as follows, with appropriate alterations in brackets. "There is no duty [on a school] to control the conduct of a third person[, such as a guidance counselor, so] as to prevent him from causing physical harm to [a student] unless [¶] . . . a special relation exists between the [school] and the [counselor] which imposes a duty upon the [school] to control the [counselor's] conduct, or [¶] . . . a special relation exists between the [school] and the [student] which gives to the [student] a right to protection." (Rest.2d Torts, § 315.)[1] "[A school, which] takes charge of a third person[, such as a guidance counselor,] whom [the school] knows or should know to be likely to cause bodily harm to [students] if not controlled is under a duty to exercise reasonable care to control the [counselor] to prevent him from doing such harm." (Rest.2d Torts, § 319.)
Further, "[a school, which] is required by law to take . . . custody of [a student] under circumstances such as to deprive the [student] of his normal power of self-protection or to subject him to association with persons likely to harm him[, such as known child molesters], is under a duty to exercise reasonable care so [as] to control the conduct of [child molesters] . . . to prevent them from intentionally harming the [student] . . . if the [school] [¶] (a) knows or has reason to know that [it] has the ability to control the conduct *1197 of the [molesters], and [¶] (b) knows or should know of the necessity and opportunity for exercising such control." (Rest.2d Torts, § 320.) "Comment a to § 320 remarks that the rule is applicable, inter alia, to `teachers or other persons in charge of a public school.' Id. at 130. Comment b to § 320 clarifies that the foregoing is true because `[t]he circumstances under which the custody of another is taken and maintained may be such as to deprive him [or her] . . . of the protection of someone who, if present, would be under a duty to protect him [or her]. . . .' Id. at 130-31. Because `a child[,] while in school[,] is deprived of the protection of his [or her] parents or guardian,' `the actor who takes custody . . . of [the] child is properly required to give him [or her] the protection [of] which the custody or the manner in which it is taken has deprived him [or her]. . . . Id. at 131." (Doe Parents No. 1 v. State, Dept. of Education, supra, 58 P.3d at p. 590.) And "a schoolmaster who knows that a group of older boys are in the habit of bullying the younger pupils to an extent likely to do them actual harm, is not only required to interfere when he sees the bullying going on, but also to be reasonably vigilant in his supervision of his pupils so as to ascertain when such conduct is about to occur." (Rest.2d Torts, § 320, com. d, pp. 131-132.)
The school district's reliance on de Villers v. County of San Diego (2007) 156 Cal.App.4th 238 [67 Cal.Rptr.3d 253] is misplaced. In de Villers, a toxicologist who worked in a county coroner's office stole poison from the laboratory and used it to murder her husband. The husband's surviving family brought a wrongful death action against the county, alleging it had negligently hired and supervised the toxicologist. In reversing a jury verdict for the plaintiffs, the Court of Appeal commented that the toxicologist's coworkers had no duty to protect the husband from murder. (Id. at p. 249.) The court found no authority supporting a claim of negligent hiring or supervision based on a duty to protect an employee's family members. (Id. at p. 252.) The reason is simple: No one in the coroner's office had the responsibility, within the scope of his or her employment, to ensure that employees were not going to use laboratory poison to murder their relatives. As a result, section 815.2, authorizing the liability of a public entity under the doctrine of respondeat superior, did not come into play.
Likewise, in Mendoza v. City of Los Angeles (1998) 66 Cal.App.4th 1333 [78 Cal.Rptr.2d 525], an off-duty police officer, who was drunk, got into a domestic squabble with his fiancée and shot her in the face, killing her. He used a personal revolver, not his service weapon. The fiancée's family brought an action against the city, alleging negligent hiring and supervision. The jury found the city 25 percent at fault and awarded damages accordingly. The Court of Appeal reversed, explaining: "Liability for negligent hiring and supervision is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of *1198 its incompetent or unfit employees. The tort has developed in California in factual settings where the plaintiff's injury occurred in the workplace, or the contact between the plaintiff and the employee was generated by the employment relationship." (Id. at pp. 1339-1340, italics added.) "Failing to require a connection between the employment and the injured party would result in the employer becoming an insurer of the safety of every person with whom its employees come into contact, regardless of their relationship to the employer." (Id. at p. 1341.)
Because de Villers and Mendoza involved the alleged liability of employers for murders committed by their employees unrelated to employment, not the special duties of a school district to protect its students, neither case is apposite. As discussed, school districts have a duty to protect students from harm, which includes an obligation to exercise ordinary care in hiring, training, supervising, and discharging school personnel. An administrator who hires a known child molester as a guidance counselor and fails to provide adequate training, supervision, or termination when faced with ongoing sexual misconduct has failed to perform the duties within the scope of his or her employment. Under section 815.2, the school district is liable for the administrator's negligence.
This is not to suggest that a claim of negligent hiring or supervision is an easy matter to prove. "[A] plaintiff cannot merely point to [a sexual] assault and battery and then claim, based simply on its occurrence, that the state was negligent in not preventing it. . . . [I]n the present case the school district would clearly not be liable if it had no [prior] knowledge of [the teacher's sexual] proclivities. In order to withstand dismissal . . ., a plaintiff must allege sufficient facts which, if proven, would demonstrate that the governmental entity should have reasonably anticipated that one of [its] employees would commit [a sexual assault]. In the instant case, the plaintiff's allegations, if proven, would permit a court to find that the school district's negligence proximately caused the plaintiff [student's] injuries." (Doe v. Durtschi, supra, 716 P.2d at p. 1245; see Dia CC. v. Ithaca City School Dist., supra, 758 N.Y.S.2d at p. 200.)
In sum, although child molestation is far outside the scope of anyone's employment, the failure of a school administrator to exercise ordinary care in protecting students from harm should render a school district liable under section 815.2 where the administrator hires an applicant known to have a history of molesting students or where, after hiring an applicant, the administrator first learns about the employee's sexual misconduct and does not properly supervise, train, or discharge her. In these circumstances, the school district would not be held liable for the intentional wrongdoing of the *1199 molester but rather, through respondeat superior, for the negligence of the administrator, who, while acting within the scope of his or her employment, failed to protect students from a known or suspected danger. I would therefore permit C.A. to proceed with his negligence-based causes of action against the school district.
NOTES
[1] C.A. was born in July 1992, and was a minor at the time of the alleged events and at the time the complaint was filed.
[2] All further statutory references are to the Government Code unless otherwise indicated.
[3] There is no indication in the record on appeal that the guidance counselor made an appearance in the trial court, and she is not a party to this appeal.
[1] "The relationship between a school and its students parallels aspects of several other special relationshipsit is a custodian of students, it is a land possessor who opens the premises to a significant public population, and it acts partially in the place of parents." (Rest.3d Torts, Liability for Physical and Emotional Harm (Proposed Final Draft No. 1, 2005) § 40, com. l, p. 761; accord, Iseberg v. Gross (2007) 227 Ill.2d 78 [316 Ill.Dec. 211, 879 N.E.2d 278, 284-285 & fn. 4].)